956 F.2d 276
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jose Antonio PONS, Defendant-Appellant.
 No. 89-10578.
 United States Court of Appeals, Ninth Circuit.
 Submitted July 17, 1991.*
Decided Feb. 26, 1992.
 
 Before CHOY and SNEED, Circuit Judges, and KELLEHER,** District Judge.
 MEMORANDUM***
 PROCEEDINGS BELOW
 The appellant, Jose Antonio Pons (Pons), was indicted for knowing distribution of seven kilograms of cocaine under 21 U.S.C. § 841(a)(1) and conspiracy to distribute cocaine under 21 U.S.C. § 846.
 After the jury returned a verdict of guilty on both counts, Pons filed a motion for judgment of acquittal or, in the alternative, for a new trial. The district court denied the motion and Pons noticed this appeal.
 DISCUSSION
 I. Effective Assistance of Counsel
 Pons asserts that he was denied effective assistance of counsel in four particulars.
 A. Standard of Review
 To establish that assistance of counsel was ineffective, a defendant must show (1) that counsel's performance was deficient; and (2) that the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). Performance is deficient if it was not reasonable under prevailing professional norms and without resort to hindsight. Id. at 688-89. In addition, courts are to indulge a strong presumption that counsel's conduct falls within the wide range of professional assistance and constitutes sound trial strategy. Id. at 689. To establish that the defense was prejudiced, a defendant must show that there is a reasonable probability that but for counsel's unprofessional errors, the result would have been different. Id. at 694. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. Id.
 B. Discussion
 Claims of ineffective assistance of counsel are ordinarily made by collateral attack under 28 U.S.C. § 2255 and not on direct appeal. U.S. v. Birges, 723 F.2d 666, 670 (9th Cir.1984), cert. denied, 466 U.S. 943 (1984), cert. denied, 469 U.S. 863 (1984). A court must reject the claim on direct appeal if it is based on factual allegations and the record is not sufficient to permit the court to resolve the question. See U.S. v. Restrepo-Rua, 815 F.2d 1327, 1329 (9th Cir.1987).
 A court may address the claim on direct appeal if review is limited to a determination of the law pertaining to the allegations of ineffective assistance, and it is not necessary to expand the record in order to make such a determination. U.S. v. Anderson, 850 F.2d 563, 565 (9th Cir.1988). Pons claims he is entitled to raise his claims on direct appeal because the grounds for his claim are clear from the record developed in the trial court.[1]
 The Court finds that each of the claims must fail because it is either improperly before this Court or lacks merit.[2]
 1. The Aaron-Lewis test
 Pons claims that he was denied effective assistance because of his counsel's mishandling of the matter of the Aaron-Lewis test conducted on the seized currency for the purpose of detecting cocaine residue. Pons claims that his attorney "inexplicably withdrew" his motion in limine to exclude evidence of the test. At the time, counsel indicated that he would cross-examine the government's witness instead, and that he would present his own expert only if necessary. At trial, counsel did cross-examine the government's witness but did not call his own expert.
 The court finds that counsel's decisions to withdraw the motion to exclude, cross-examine the government's experts and call off his expert witness did not constitute unreasonable conduct in light of all the circumstances and the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance and constitutes sound trial strategy.
 In any case, Pons has failed to show prejudice resulting from counsel's decision not to call an expert. This court has no evidence in the record before it that an expert witness would have helped Pons' defense.
 Nor can this Court assess whether counsel was unprepared to cross-examine on the ground that he had failed to read a U.S. Department of Justice article regarding the Aaron-Lewis test. This claim also relies upon matters outside the trial record.
 
 2. Allowing Agent Elliott's testimony
 
 1
 Pons argues that counsel should not have allowed the testimony of Agent Elliott regarding the illegality of the short gun barrels seized from Pons' car to go unchallenged. He argues that the testimony was incorrect pursuant to U.S. v. Combs, 762 F.2d 1343 (9th Cir.1985). Whether or not Elliott's testimony was correct, counsel objected to the testimony and was overruled. Counsel then proceeded to cross-examine Elliott on the issue. Pons has failed to show that counsel's cross-examination was deficient under prevailing professional norms.
 
 3. Failing to locate Julia Guzman
 
 2
 Pons argues that counsel should have done more to locate Julia Guzman and interview her. On the record before it, this Court cannot determine whether Pons was prejudiced by this conduct, i.e., whether there is a reasonable probability that but for counsel's failure to locate her, the result would have been different. This determination would require looking at facts outside of the trial record and thus cannot be made on direct appeal.
 
 4. Counsel's color experiment
 
 3
 Pons claims he was prejudiced because the government's cross-examination of Watkins regarding the lighting experiment he and counsel had conducted revealed deficiencies with the experiment and made the defense look incompetent.
 
 
 4
 Pons has not shown that counsel's conduct was outside the wide range of reasonable professional assistance, or that, but for counsel's unprofessional errors, the trial's outcome would have been different.
 
 II. Admissibility of Contested Evidence
 
 5
 Pons argues that the admission of certain evidence was unduly prejudical and an abuse of discretion.
 
 A. Standard of Review
 
 6
 This Court reviews the admission of evidence under Federal Rule of Evidence 403 for abuse of discretion. U.S. v. Crespo de Llano, 838 F.2d 1006, 1018 (9th Cir.1987). For evidence to be admissible, it must be relevant to a material issue in the case and the probative value of the evidence must outweigh any potential for unfair prejudice. U.S. v. Manafzadeh, 592 F.2d 81, 86 (9th Cir.1979). The government bears the burden of demonstrating the relevance of a contested piece of evidence. U.S. v. Mehrmanesh, 689 F.2d 822, 830 (9th Cir.1982).
 
 B. Discussion
 1. Evidence Regarding Guzman's Relatives
 
 7
 The government was allowed to elicit Guzman's testimony that his relatives who had introduced him to Pons were unemployed but always seemed to have money. Pons claims that Guzman's testimony tended to create guilt by association and was therefore improperly admitted under this court's holding in U.S. v. Dickens, 775 F.2d 1056, 1058 (9th Cir.1985).
 
 
 8
 In Dickens, the court held that questioning showing a connection between the defendant and a group engaged in criminal drug activity was improper since it was not probative of the crimes charged nor to impeachment. The court held that it did not bear on the defendant's truthfulness, even though the witness had previously denied association with the group, nor did the association with the group demonstrate a motive for lying. Finally, the court in Dickens held that the defendant never opened the door on direct examination, even though he denied dealing drugs, because he never specifically mentioned the group.
 
 
 9
 The trial court in this case did not abuse its discretion in allowing the testimony. Guzman's testimony came in on re-direct, after the defense had elicited on cross-examination his admission that he lied to protect his aunt whom he believed was in the drug business. Thus, the defense opened the door to the questioning. Furthermore, unlike the testimony in Dickens, this testimony bears on the witness's credibility and demonstrates a motive for lying.
 
 
 10
 Significantly, it is unlikely Pons was prejudiced by the testimony since the relatives' suspected dealings were never substantiated and since the link between Pons and Guzman's relatives is a weak one.
 
 2. Evidence Relating to Firearms
 
 11
 The trial court did not abuse its discretion by admitting Agent Elliott's testimony regarding the illegal status of the short barrels.[3] The court had previously ordered that evidence regarding the illegality of the weapons was inadmissible since Pons was not charged with possession of illegal firearms. The trial court allowed the testimony, however, because it found that defense counsel "opened the door" to such testimony on cross-examination by comparing the weapons to those used by the Israeli military in their raid on Entebbe.
 
 
 12
 Since defense counsel's cross-examination had the potential to create the false impression that Pons legitimately possessed the short barrels, it was not an abuse of discretion for the district court to allow the government to bring out the illegality of the weapons on redirect. See U.S. v. Segall, 833 F.2d 144, 148 (9th Cir.1987); U.S. v. Taylor, 716 F.2d 701, 710 (9th Cir.1983). Furthermore, both parties had already elicited testimony that associated the guns with objectionable purposes.
 
 
 13
 The trial court did not abuse its discretion by excluding the gun engraver's testimony. Pons contends the evidence was relevant to show that he possessed the weapons as a legitimate gun collector. It is not clear, however, that the engraver's testimony would have made this defense more probable. The engraver did not have an agreement to engrave more of Pons' weapons; he was not expecting to engrave the particular assault weapons seized; and he had only engraved a pistol for Pons, not an assault weapon. Although the engraver's testimony along with other evidence of legitimate gun collecting may have made the existence of the defense more probable, it was not an abuse of discretion to exclude it.
 
 
 14
 The trial court did abuse its discretion by allowing the advertisement for the "street sweeper" to be read to the jury. The flier was found torn up in Pons' fireplace, and there was no evidence at trial whatsoever that Pons sought the advertisement or did anything with it other than throw it away. Despite the advertisement's relevance to Pons' connection with the type of firearms favored by drug dealers, it was not probative of any of the crimes charged and the advertisement's language was extremely prejudicial.
 
 
 15
 This constituted harmless error, however, since the substantial amount of evidence linking Pons with weapons associated with drug dealing makes it is more probable than not that the admission of the advertisement did not materially affect the verdict. See U.S. v. Browne, 829 F.2d 760, 766 (9th Cir.1987), cert. denied, 485 U.S. 991 (1988); U.S. v. Valle-Valdez, 554 F.2d 911 (9th Cir.1977).
 
 
 16
 III. Jury Instructions on "Possession"
 
 
 17
 Pons argues that giving the jury instructions on "possession" was error.
 
 A. Standard
 
 18
 This court reviews instructions on the elements of an offense and definitions of legal terms de novo. U.S. v. Arvin, 900 F.2d 1385, 1390 (9th Cir.1990), cert. denied, 112 L.Ed.2d 664 (1991). Instructions are to be reviewed "as a whole, in the context of the entire trial, to determine whether they were misleading or inadequate to guide the jury's determination." Id.
 
 B. Discussion
 
 19
 Pons claims it was error for the court to instruct the jury regarding the terms actual and constructive possession since this "allowed" the jury to convict him on a theory not included in the indictment. See U.S. v. Miller, 471 U.S. 130, 138-45 (1985).
 
 
 20
 Pons points to U.S. v. Solis, 841 F.2d 307 (9th Cir.1988), in which this court reversed distribution of heroin convictions because it found that the trial court improperly instructed on the term possession when neither defendant was charged with possession.[4] The court held that there was nothing to connect the instructions to the charged crime of conspiracy. Id. at 308. The court found that "the jury could very well have concluded that it could convict for possession of heroin for distribution" since it had evidence of possession before it and had been told the elements of the crime of possession of heroin. Id. It was not enough that the trial court read the indictment to the jury and told the jury that the defendants were on trial "only for the crimes charged in the indictment, not for any other activities," because the trial court also told the jury that they were bound to follow the instructions, which indicated the jury could convict for possession of heroin for distribution. Id.
 
 
 21
 This case is distinguishable from Solis. In this case, the indictment is clear on its face that Pons was not charged with possession with intent to distribute. The indictment charges Pons and two other defendants with distribution of cocaine, but charges only one defendant, Powell, with possession with intent to distribute. The fact that both crimes appear in the indictment, and that Pons is charged only with distribution and not possession, makes it highly unlikely that the jury was confused into thinking that Pons could be convicted for possession with intent to distribute. Also, in Solis, the court found it significant that there was evidence before the jury that the defendants possessed heroin. In this case, there was little or no evidence that Pons possessed the cocaine. The jury would thus be less likely in this case to convict on a possession theory.
 
 
 22
 Notwithstanding the foregoing, we note some error in the instructions and think that they should not have been given. Nevertheless, the court finds that the giving of them constituted harmless error.
 
 
 23
 To determine whether the error was harmless in a matter such as jury instructions, the court is to apply the more-probable-than-not standard. Browne, 829 F.2d at 766. Because the indictment was clear on its face that only Powell, and not the two other defendants, was charged with possession with intent to distribute, and because the evidence that Pons ever possessed cocaine is so weak, it is not likely that the jury instructions indicated to the jury that it could convict Pons of a possession crime.
 
 
 24
 IV. Denial of Motion for Judgment of Acquittal
 
 
 25
 Pons claims there was insufficient evidence of a conspiracy or of distribution to support the verdict.
 
 A. Standard of Review
 
 26
 This court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. U.S. v. Feldman, 853 F.2d 648, 654 (9th Cir.1988), cert. denied, 489 U.S. 1030 (1989). In evaluating the sufficiency of the evidence to support the conviction, the court must respect the jury's ability to judge the credibility of the witnesses, resolve factual conflicts, and draw inferences. Id. Reasonable inferences must be drawn in favor of the government and circumstantial evidence is sufficient to sustain a conviction. U.S. v. Harris, 792 F.2d 866, 868 (9th Cir.1986).
 
 B. Discussion
 
 27
 Pons argues that the government's case rests upon assumptions made about the orange bag found in Powell's home, which he contends are not supported by the evidence. The Court finds that the record contains sufficient evidence to support Pons' conviction on both counts. To begin, there need not be direct evidence of conspiracy to support a conspiracy conviction. "[A] defendant's knowledge of and participation of a conspiracy may be inferred from circumstantial evidence and from evidence of the defendant's actions. Acts which seem otherwise innocent, when viewed in the context of the surrounding circumstances, may justify an inference of complicity." U.S. v. Calabrese, 825 F.2d 1342, 1348 (9th Cir.1987).
 
 
 28
 The jury could have concluded that Pons was involved in illicit drug activity from the evidence that Pons ordered the transfer of gym bags from Pons' car to Powell's car; agents found one of the bags at Powell's residence containing five kilograms of cocaine; and agents discovered cash at Pons' house which an expert testified was covered with sufficient cocaine residue to indicate it had been in recent contact with cocaine. Further, the transfer of the bags was not an isolated piece of evidence but was part of on-going activity that suggested that Pons was involved in the distribution of drugs (e.g., activity involving firearms and large amounts of cash).[5]
 
 
 29
 Although Pons tried to show that his legitimate jewelry business was the reason behind the cash and "deliveries," his defense was refuted by Guzman's testimony that Pons did not mention delivering jewelry until their trip into San Francisco; by wholesale jeweler Steven Silver's testimony that his business did not conduct its volume business in currency and that he and Pons had an explicit understanding that they would not conduct business in currency; and by the fact that neither Pons nor his business ever filed the appropriate IRS tax form required for cash transactions over $10,000.
 
 
 30
 Moreover, the terms of Guzman's employment were highly suspect: Pons paid Guzman $6,000 a month to drive and deliver merchandise, yet Guzman never produced a driver's license or insurance; Guzman did not get details as to what he was delivering; Guzman often sat in a motel room for days; Pons did a lot of the driving when they were together; Guzman helped Pons count money; Guzman performed unusual tasks, e.g., leave an expensive car unlocked with the keys in it; and Guzman himself thought he was handling drugs or cash.
 
 
 31
 Finally, the secrecy with which Pons conducted his activities could have been considered by the jury as indicating the criminal character of the activities.
 
 
 32
 In light of the evidence outlined above and the jury's superior ability to judge the credibility of the witnesses, resolve factual conflicts, and draw inferences, the jury could have found the elements of the crime beyond a reasonable doubt.
 
 
 33
 The judgment of conviction and the order denying Pons' motion for judgment of acquittal are AFFIRMED.
 
 
 34
 The order placing a limited stay upon this action is hereby vacated.
 
 
 
 *
 The matter was deemed submitted without oral argument pursuant to 9th Cir.R. 34-4
 
 
 **
 Honorable Robert J. Kelleher, District Judge for the Central District of California, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The authorities Pons cites in support of this entitlement to a direct appeal are inapposite. U.S. ex rel. Williams v. Brown, 721 F.2d 1115 (7th Cir.1983), is a collateral review case and U.S. v. Grandison, 783 F.2d 1152 (4th Cir.1986), cert. denied, 479 U.S. 845 (1986), is a case where the court refused to hear the ineffectiveness claim on direct appeal
 
 
 [2]
 As to those claims that are not properly before this Court, Pons is not precluded from raising these issues in a habeas corpus petition
 
 
 [3]
 Pons does not dispute the fact that evidence of possession of firearms by one accused of narcotics offenses is admissible under the theory that firearms are a "tool of the trade" of drug dealers. See U.S. v. Crespo de Llano, 838 F.2d at 1018
 
 
 [4]
 The possession instructions were given as an element in the crime of aiding and abetting
 
 
 [5]
 The jury was entitled to infer that Pons was involved in drug activity because he possessed the firearms