**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Antonio Lara SOLIS,
Defendant–Appellant.**

**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Manuel Salazar SANCHEZ,
Defendant–Appellant.**

Nos. 87–1096, 87–1098.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 13, 1988.

Decided March 8, 1988.

Steve Emery Teich, San Francisco, Cal., for defendant-appellant Solis.

Victor Palacios, San Francisco, Cal., for defendant-appellant Sanchez.

Sanford Svetcov, and Robert L. Dondero, Asst. U.S. Attys., San Francisco, Cal., for plaintiff-appellee.

Appeal from the United States District Court for the Northern District of California.

Before NOONAN and THOMPSON, Circuit Judges, and TEVRIZIAN,[*] District Judge.

NOONAN, Circuit Judge:

Manuel Salazar Sanchez and Antonio Lara Solis appeal their convictions for conspiracy to violate the drug laws of the United States and for distributing heroin. We affirm the conviction of conspiracy and reverse the conviction for distributing.

The most substantial point raised on this appeal is the difference between the indictment and the instructions to the jury on Count 4. Count 4 charged Sanchez and Solis with distributing six ounces of heroin. The instructions to the jury included an instruction on distribution and also instructions on possession of heroin—a crime not charged against either defendant. These instructions on possession were specifically given as an element in the crime of aiding and abetting. They were also given apart from the instruction on aiding and abetting in such a way that they could have applied to either defendant. Although the government contends that the instructions were appropriate in indicating an element of the crime of conspiracy to violate the drug laws, there is nothing to connect the instructions to the crime of conspiracy. The government finally contends that the instructions were merely "superfluous." But there was evidence before the jury that the defendants possessed heroin, and, being told the elements of the crime of possessing heroin, the jury could very well have concluded that it could convict for possession of heroin for distribution. It is true, as the government contends, that the court read the indictment to the jury and the court told the jury that the defendants were on trial "only for the crimes charged in the indictment, not for any other activities." But the court told the jury also, of course, that the jury must follow the instructions, and the instructions indicated that this jury could convict these defendants for possession of heroin for distribu-

* Honorable Dickran M. Tevrizian, Jr., United States District Judge for the Central District of California, sitting by designation.

tion. It is also true, as the government argued, that the jury returned a verdict of "Guilty as to count four (4) of the indictment." But this verdict is unenlightening as to whether the jury was under the impression, due to the additional instructions, that they could convict on count 4 if they found possession with intent to distribute.

■ The statute 21 U.S.C. § 841(a)(1) makes it a crime "to manufacture, distribute, or dispense or possess with intent to manufacture and distribute or dispense a controlled substance." Manufacturing is not distributing. Possessing is not manufacturing or distributing. To possess with intent to distribute is an offense distinct from distributing. *See United States v. Carter,* 576 F.2d 1061, 1064 (3d Cir.1978). When the jury was told it could convict for possession it was told it could convict for a crime not charged by the grand jury. To the extent that *United States v. Montiell,* 526 F.2d 1008, 1011 (2d Cir.1975), can be read as expressing a different view, we decline to follow it.

The seminal case in this area is *Ex parte Bain,* 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849 (1887), holding it unconstitutional for a court to delete words from an indictment, making the offense narrower than that charged by the grand jury. The modern reading of *Bain* was supplied by the Supreme Court in 1985, holding that a mere narrowing of an indictment by the court is not in itself unconstitutional, but it is unconstitutional to convict a defendant of "an offense different from that which was included in the indictment." *United States v. Miller,* 471 U.S. 130, 142, 105 S.Ct. 1811, 1818–19, 85 L.Ed.2d 99 (1985).

In the case at bar Solis and Sanchez have been convicted upon instructions which were not included in the indictment. There are those, no doubt, who may see insistence on conformity with the indictment as a requirement of a technical nature unnecessarily encumbering the course of criminal justice. In a number of quarters the grand jury is not regarded as much of a bulwark for the liberties of citizens—lap dogs for the prosecutor is more likely to be the popular impression. *See* Tom Wolfe, *A Bonfire of the Vanities* (1987), 602–614. Nonetheless, despite the lack of respect that the grand jury often has, the grand jury still is a thin line between official zeal and the citizenry. In any event, we are bound by *Miller* to conclude that the Fifth Amendment is violated when the grand jury charges one crime and the jury convicts of another.

■ The government objects that the defendants made no objection to the instructions. They not only failed to object, they expressly said they had no objection. Counsel for Solis even collaborated with the court in inserting dates on the instruction on possession. We do not commend counsel for their acquiescence but we are constrained by the rules governing "plain error" to hold that this constitutional error was not waived by the failure to point it out to the court.

The defendants press the same argument of a fatal amendment of Count 1, but here without success. Count 1 simply charges them with conspiracy under 21 U.S.C. § 846 to commit the drug offenses set out in 21 U.S.C. § 841. Nothing in the court's instructions impermissibly added an offense to the offense charged by the Grand Jury in this count.

■ Solis makes an earnest attack on the sufficiency of the evidence against him. Looking at it as we must from the government's viewpoint and judging what a reasonable jury could have concluded beyond a reasonable doubt, *see United States v. Larios,* 640 F.2d 938, 940 (9th Cir.1981), we note the following facts:

On November 13, 1986 a government agent had set up a drug deal with Sanchez at a K–Mart store in Redwood City. Before Sanchez appeared in the K–Mart parking lot, Solis drove in by himself and cruised the area looking over the cars in the lot. He parked the car, then changed his location twice. He appeared to communicate once with Jesus Avelar Fuentes who was to be the middleman between Sanchez and the government agent. At one point he left his car and went to a pay telephone. He was in the parking lot for about 30

minutes conducting these maneuvers. The police witnesses believed that he was conducting counter-surveillance for the drug dealers.

After Sanchez had arrived Solis entered the K–Mart. Fuentes obtained the heroin from Sanchez and passed it to the agent. The police gave a signal and arrested Fuentes. Sanchez attempted to drive away and was captured after a chase. Solis came out of the K–Mart but on seeing the police arresting Fuentes immediately went back into the store.

Solis said he had gone to the K–Mart to leave his car in the lot with a "For Sale" sign in the window and that he expected to get a ride back to his apartment with Sanchez, who was his brother-in-law. He expected Sanchez to pick him up in the store where the BB guns were. Solis in fact had no communication with Sanchez after Sanchez drove into the lot. The police did not see any "For Sale" sign on his car. He was arrested in the garden supply section of the store.

After his arrest Solis told the police that he lived in apartment 2, 600 Oakside, Redwood City. The apartment had a bedroom, a living room, and a kitchen. Two other persons shared the rent with Solis, but he paid the utilities and the telephone was in his name. He slept in the bedroom or the living room, and he had just left the apartment when he went on his expedition to the K–Mart.

In the bedroom were found 33.6 grams of heroin. It was packaged like the heroin delivered by Sanchez to Fuentes in the parking lot. Also in the bedroom were a knife and a razor of a kind used to cut heroin. The knife and razor both had heroin on their edges. A triple-beam balance of the kind used by heroin dealers to weigh their product was also in the bedroom.

The jury was free to disbelieve Solis' story of what he was doing at the K–Mart and to infer from his conduct that he was conscious of criminal behavior and indeed engaged in a preliminary survey of the parking lot, however ineffective he in fact was in discovering the police who were already on hand. The presence of heroin

and the tools of the trade in the bedroom he had recently left were strong corroboration of his knowledgeable participation with Sanchez. Finally, when Fuentes wanted heroin, he called the telephone number listed to Solis where Sanchez was three time on hand to take his order.

Conjecture and speculation might tease out a series of coincidences by which the innocence of Solis could be sustained. Cumulatively, having his place be the telephone headquarters for supplies, having heroin and instruments still carrying the marks of the cutting of heroin in his bedroom, cruising in the parking lot just before the deal was consummated, making a telephone call shortly before the deal went down, behaving evasively after Fuentes' arrest, and making up an implausible cover story—the circumstances were such that a jury could properly find him Sanchez's co-conspirator.

A number of sentencing questions have been raised as to the sentences imposed under count 4. In the light of our reversal, these questions are now moot.

*AFFIRMED as to conviction under Count 1; REVERSED as to conviction under Count 4.*