**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Edward O. HOSKINS, Defendant–
Appellant.**

**No. 96–6517.**

United States Court of Appeals,
Sixth Circuit.

Argued March 15, 1999.

Decided March 30, 1999.

Charles P. Wisdom, Jr., Asst. U.S. Attorney (argued and briefed), R. Michael Murphy, Asst. U.S. Attorney, Office of U.S. Attorney, Lexington, KY, for Plaintiff–Appellee.

Edward O. Hoskins, Manchester, KY, pro se, C. Mark Pickrell (argued and briefed), Nashville, TN, for Defendant–Appellant.

Before: JONES, CONTIE, and MOORE, Circuit Judges.

CONTIE, Circuit Judge.

Defendant-appellant, Edward O. Hoskins, appeals his sentence for conspiracy to distribute marijuana in violation of 21 U.S.C. § 846(a)(1). For the following reasons, we affirm in part and reverse in part.

## I.

In August 1993, William Dean Rader offered the Federal Bureau of Investigation ("FBI") information about Wayne McQueen, and as a result, the FBI initiated an investigation. The FBI used Rader as a confidential informant ("CI") to purchase drugs from McQueen.

Before becoming a CI, Rader had had his first marijuana deal with McQueen in 1978 and helped McQueen grow, guard, strip, and buy marijuana. Prior to his cooperation with the government, Rader had helped Eddie Hoskins guard a marijuana patch that belonged jointly to Hoskins and McQueen in the early 1990s. After he began cooperating with the government, Rader continued his association with McQueen and Hoskins and became involved in several marijuana transactions. On August 16, 1993, Rader attempted to buy a pound of marijuana from McQueen. McQueen did not have any marijuana that day, but he took Rader to the defendant herein, Eddie Hoskins. Hoskins had a supply of marijuana, and Rader gave McQueen $2,500 for one pound. McQueen counted the money, which was in $500 stacks, and turned it over to Hoskins. Rader asked McQueen for and was given permission to buy marijuana directly from Hoskins. Rader felt he had to ask McQueen's permission so that McQueen would not think he was going behind his back. On August 20, 1993, the CI bought another pound of marijuana from Hoskins, and on September 10, 1993, the CI bought a third pound from Hoskins. On September 29, 1993, the CI Rader purchased a pound of marijuana from McQueen and another person named Carol Marcum, who was also involved in the marijuana business. Marcum was

paid for a quarter of a pound by the CI, and McQueen was paid for three-quarters of a pound.

On June 22, 1994, the CI went to a farm McQueen owned and attempted to buy marijuana plants from McQueen. McQueen did not have any plants for sale, but asked Lavis Hoskins, who was present, if he had any for sale. Lavis Hoskins left the farm alone and returned with 35 marijuana plants which he sold to the CI.[1] The CI subsequently bought approximately 50 marijuana plants from Eddie Hoskins on two separate occasions in June 1994.

On May 23, 1994, the CI purchased 240 plants from James Douglas with whom he had had dealings before he began cooperating with the government. Before meeting with Douglas, the CI had talked with McQueen, who was drunk, and had told McQueen that he wanted to purchase marijuana plants from Douglas and asked directions to his house.

On February 22, 1996, a federal grand jury in London, Kentucky returned an indictment against Edward Hoskins, Wayne McQueen, Carol Marcum, and Lavis Hoskins. The indictment charged these individuals and three unindicted co-conspirators with conspiring to manufacture, to possess with intent to distribute, and to distribute marijuana.

On July 22, 1996, a trial commenced on the conspiracy charge. On July 25, 1996, the jury returned guilty verdicts against Wayne McQueen, Carol Marcum, and Edward Hoskins. The jury acquitted Lavis Hoskins, who had made a single sale of marijuana plants to the CI.

On November 1, 1996, the court sentenced those convicted. Defendant and McQueen were each sentenced to a 120–month term of imprisonment.

At sentencing, defendant Hoskins objected to being held responsible for the 240 plants that the CI, William Dean Rader, purchased on May 23, 1994 from James Douglas, one of the three unindicted co-conspirators. The court overruled Hoskins' objection to the 240 plants. The court found that "the one thread that runs through this entire case is the fact that McQueen and Eddie Hoskins were up at the top. They were the puppeteers, they were pulling the strings and that makes it easy for me, because they were at the top, they knew what was going on."

Defendant timely filed an appeal.

## II.

■ We must first decide whether the drug amount which the district court attributed to defendant Hoskins should have included the 240 marijuana plants that James Douglas sold to the CI on May 23, 1994. The presentence report determined that there was a total of 1,142 marijuana plants involved in the conspiracy, which is the equivalent of 114.2 kilograms of marijuana. In addition, the conspiracy involved a total of 1,969.26 grams of processed marijuana, which is the equivalent of 1.969 kilograms, for a total of 116.169 kilograms of marijuana.

Originally, the total amount of marijuana involved in the conspiracy was attributed to defendant Hoskins. At the sentencing hearing, Hoskins objected and alleged that he was incorrectly being held responsible for 353 marijuana plants that belonged to Douglas—the 240 plants that Douglas sold to the CI on May 23, 1994, and 113 plants that police officers eradicated from Douglas' residence on February 21, 1996. The United States conceded that the 113 plants eradicated from Douglas' residence should not have been attributed to Hoskins, and the probation officer recalculated the number of marijuana plants attributable to Hoskins from 1142, as originally stated in the presentence report, to 1029 (1142 minus

---

**1.** Lavis Hoskins was Eddie Hoskins' brother. He was indicted as a co-conspirator in the present case, but was acquitted.

113). Although the United States conceded that the 113 plants found at Douglas' residence should not be attributed to Hoskins, the government refused to deduct the 240 plants sold by Douglas to the CI on May 23, 1994 and attributed these 240 plants to Hoskins. The district court agreed that these 240 plants should be included, and the final number of marijuana plants attributed to Hoskins was 1,029 plants, which is the equivalent of 102.9 kilograms of marijuana. In addition, 1,907.05 grams of processed marijuana was attributed to him, which is the equivalent of 1.907 kilograms, for a total of 104.807 kilograms of marijuana attributed to defendant Hoskins.

Under the United States Sentencing Guidelines, defendant's base offense level was calculated on the basis of 104.807 kilograms of marijuana. The guideline for violation of 21 U.S.C. § 846 is found in U.S.S.G. § 2D1.1 and calls for a base offense level of 26, because the amount of marijuana was at least 100 kilograms, but less than 400 kilograms. The Probation Office determined that Hoskins had a total offense level of 28, with a base offense level of 26 due to the drug amount, and a two-point enhancement because Hoskins had shown the CI a rifle during one drug transaction. Under the guidelines, Hoskins' sentence, based on a total offense level of 28, would have been 78 to 97 months. However, the Probation Office determined that because Hoskins' participation involved 1,029 marijuana plants, this resulted in a statutory minimum sentence of 120 months pursuant to 21 U.S.C. § 841(b)(1)(A)(vii), which requires a ten-year minimum sentence if 1,000 or more marijuana plants are involved in an offense.[2] In making this calculation, the Probation Office included the 240 plants

that James Douglas had sold to the CI on May 23, 1994.

On appeal, Hoskins objects to the calculation of the number of marijuana plants for which he should be held responsible and argues that the 10-year statutory minimum pursuant to 21 U.S.C. § 841(b)(1)(A)(vii) should not apply. Specifically, Hoskins argues that he could not conceivably be held responsible for 240 marijuana plants sold by James Douglas to the CI. Hoskins argues that there was never any showing that Hoskins knew of or had met Douglas or that he was in a conspiracy to grow marijuana with Douglas. Moreover, the testimony at trial failed to show any connection between Hoskins and Douglas, except that each knew Wayne McQueen.

### III.

 A district court's determination of the quantity of drugs used to compute a defendant's sentence is a finding of fact that should be upheld unless clearly erroneous. *United States v. Wilson*, 954 F.2d 374, 376 (6th Cir.1992). The district court's finding must be supported by a preponderance of the evidence. *United States v. Hodges*, 935 F.2d 766, 770 (6th Cir.), *cert. denied*, 502 U.S. 889, 112 S.Ct. 251, 116 L.Ed.2d 206 (1991). When a defendant is being held accountable for the actions of others, that conduct must have been in furtherance of activity that the defendant jointly undertook with others, and it must have been known or reasonably foreseeable to him. *United States v. Sims*, 975 F.2d 1225, 1243 (6th Cir.1992), *cert. denied*, 507 U.S. 932, 113 S.Ct. 1315, 122 L.Ed.2d 702 (1993).

In the present case, defendant does not contest the attribution to him of amounts of processed marijuana sold to the CI by

---

**2.** Pursuant to U.S.S.G. Chapter 5, Part A, based on a total offense level of 28 and a criminal history category of I, the guideline range for imprisonment is 78 to 97 months. However, § 5G1.1(b) requires that where a statutory required minimum sentence is

greater than the maximum of the applicable guideline range, the statutorily required minimum sentence shall be the guideline sentence. In the present case, the statutorily required minimum is 120 months. 21 U.S.C. § 841(b)(1)(A)(vii).

McQueen and others when he was not present. For example, he does not contest the 456.7 grams of processed marijuana sold by McQueen and Carol Marcum to the CI on September 29, 1993, in which it was explained to the CI that McQueen and Marcum had planted a marijuana patch together and that McQueen received 75 percent of the profits and Marcum received 25 percent of the profits. Although Hoskins was apparently not involved in growing the marijuana, Hoskins, in effect, concedes that he and McQueen had a deal to refer customers to each other for the sale of processed marijuana, presumably in order not to lose customers. Therefore, any sales of processed marijuana McQueen or Hoskins made were attributable to each other because they shared customers. When McQueen was out of marijuana, he would refer his customers to Hoskins.

However, defendant Hoskins does contest that he was involved in a conspiracy or jointly undertaken activity with James Douglas. The district court determined that James Douglas' sale of 240 marijuana plants to the CI on May 23, 1994 was foreseeable to Hoskins, stating:

> [I]t is easy to make the foreseeable finding with regard to Eddie Hoskins and McQueen because they were up at the top and it is not necessary that a member of the conspiracy know everything that the conspiracy is involved with or that the conspiracy is doing, knowing the general purpose is sufficient. . . .

First, we find that it is inconsistent for the United States to make a distinction between the marijuana plants grown by Douglas and the marijuana plants sold by Douglas. We believe that for sentencing purposes, there is no distinction between the 113 plants found in the ground at Douglas' residence on February 21, 1996, which were not attributed to Hoskins, and the 240 plants Douglas sold to the CI on May 23, 1994, which were attributed to Hoskins. If Douglas was a member of a jointly undertaken criminal activity between himself, McQueen, and Hoskins in the growing and selling of marijuana plants, the 240 plants sold by Douglas and the 113 plants in the ground at Douglas' residence would have been equally foreseeable to Hoskins. If Douglas was a member of the conspiracy between McQueen and Hoskins, then any plants he grew or sold would have been foreseeable to Hoskins.

We believe, however, there is insufficient evidence of such a conspiracy. The district court must find, in regard to drug quantity, that by a preponderance of the evidence the 240 plants of marijuana, which the CI purchased from James Douglas on May 23, 1994, was a part of the conspiracy at issue in the present case. *Hodges*, 935 F.2d at 770. The district court made no finding in this regard, but implicitly assumed that any marijuana grown in the area was attributable to Hoskins, a top dealer. We disagree.

The background for the sale of the 240 plants is as follows. Although McQueen had introduced the CI to Douglas a year or two before the CI began cooperating with the government and they bought plants from Douglas at that time, McQueen was not part of the sale on May 23, 1994. The cross-examination of the CI at trial indicated that on May 23, 1994, the CI sought out McQueen at Carol Marcum's house because he wanted to purchase some marijuana plants. However, McQueen was lying drunk in bed. The CI asked McQueen if it would be all right with him if he purchased plants from Douglas, whom McQueen had introduced him to years earlier. The CI felt he always had to have McQueen's permission when he did not deal with him directly. McQueen did not object and gave him directions to Douglas' residence. The CI was able to find Douglas' house and purchased 240 plants from him on May 23, 1994. The CI initiated this sale to him by Douglas, and the CI cannot be considered a co-conspirator. There was no evidence that Douglas was one of the contract growers of marijuana plants for McQueen or Hoskins or

that he shared customers with them in the buying or selling of processed marijuana. The CI merely made a separate purchase from Douglas, and on cross-examination, the CI stated that all the people he had dealings with during the course of his undercover work for the government were not necessarily working together.

Although the CI was not specifically asked if he believed that Douglas was part of the conspiracy, it should be noted that another defendant in the present case who had as much connection to the conspiracy as Douglas did was acquitted by the jury—Lavis Hoskins. On June 22, 1994, a month after buying the marijuana plants from Douglas, the CI arrived at a farm owned by McQueen and wanted to buy marijuana plants. However, McQueen did not want to sell any of his plants and instead referred the CI to Lavis Hoskins, who happened to be there, along with his brother, defendant Eddie Hoskins. Lavis indicated that he had to go away by himself without defendant or McQueen in order to get plants to sell to the CI. Lavis Hoskins left alone and later returned with approximately 34 marijuana plants and sold them to the CI.

At trial, the lawyer for Lavis Hoskins pointed out that this was the only connection that Lavis had had with the conspiracy. In other words, the CI had purchased plants from Lavis on one occasion, and there was no indication McQueen or defendant were involved in that sale. The jury evidently did not think that this evidence was sufficient to establish that this sale was part of the conspiracy, because it acquitted Lavis Hoskins. Although it is true that the standard of proof is different (the jury to convict Lavis had to find that he was a member of the conspiracy beyond a reasonable doubt, whereas the district court at the sentencing of defendant had to find that Douglas was a member of the conspiracy only by a preponderance of the evidence), it should be noted that the evidence was weaker in regard to Douglas than it was in regard to Lavis. In the case

of Lavis, the CI met him on McQueen's property and the CI was referred to Lavis because McQueen did not have plants for sale. Eddie Hoskins was also present. In the case of Douglas, the CI was the one who suggested that he go see Douglas when he found that McQueen was drunk, and Douglas was a person with whom he had previous dealings prior to becoming an undercover agent. Moreover, there was no evidence that defendant Hoskins knew of the existence of Douglas or had ever had any dealings with him.

For these reasons, we do not think that by a preponderance of the evidence it can be said that the sale of 240 plants by James Douglas to the CI was part of the conspiracy at issue in the present case. We believe the district court erred in concluding that because McQueen and Hoskins were "at the top" that every deal the CI conducted should be attributed to both of them. The district court did not make any definite finding that James Douglas was a member of the conspiracy between McQueen and Hoskins, and therefore any plants bought from him could be attributed to Hoskins. Besides the isolated sale that occurred on May 23, 1994 to the CI, who cannot be considered a member of the conspiracy, there is no evidence Douglas was a member of the conspiracy between Hoskins and McQueen.

■ Because it was not established by a preponderance of the evidence that Douglas was a member of the conspiracy between McQueen and defendant Hoskins, we believe it was clearly erroneous for the district court to attribute to defendant the 240 marijuana plants sold by Douglas to the CI on May 23, 1994, and to find that this sale was foreseeable to Hoskins. It has not been established by a preponderance of the evidence that James Douglas was a contract grower for McQueen or Hoskins or that the sale he made to the CI on May 23, 1994 was part of a conspiracy between himself, McQueen, and Hoskins. The reasoning of the district court implies that because Hoskins and McQueen were

two top dealers in the area, any marijuana grown and sold in the area was attributable to each of them. We believe the sentencing guidelines require a more particularized finding. *Sims,* 975 F.2d at 1243.

Attribution of James Douglas' 240 marijuana plants to Hoskins resulted in a total attribution to Hoskins of 1,029 plants, which resulted in a ten-year minimum statutory sentence for Hoskins, because the amount was over 1000 plants. Because we believe the district court erred in finding that the sale of these 240 plants were involved in a conspiracy between Douglas, McQueen, and Hoskins or that Hoskins could have foreseen the sale of these plants, we vacate defendant's sentence and remand to the district court for resentencing based on a total attribution of 789 marijuana plants (1029 minus 240).

### IV.

We must next decide whether defendant Hoskins may raise the "safety valve" issue for the first time on appeal.

■ Hoskins claims the district court should have made specific factual findings about his entitlement to the "safety valve" benefit of 18 U.S.C. § 3553(f) at sentencing. He acknowledges that he failed to raise this issue with the district court, but claims the statute requires the district court to make a finding without his prompting because subsection (f) does not specifically require him to make a motion in contrast to subsection (e), which requires a motion from the United States.

■ We disagree. First, it is well-established that a defendant may not raise a sentencing issue for the first time on appeal. *United States v. Nagi,* 947 F.2d 211, 213 (6th Cir.1991), *cert. denied,* 504 U.S. 958, 112 S.Ct. 2309, 119 L.Ed.2d 230 (1992). Hoskins' failure to raise this objection at sentencing waives it for appellate purposes. *United States v. Cullens,* 67 F.3d 123, 124 (6th Cir.1995).

■ Moreover, defendant's contention that the district court must make findings in regard to 18 U.S.C. § 3553(f) is simply not supported by the plain reading of the statute. There is nothing that states a district court must make a finding in regard to section 3553(f). Moreover, as U.S.S.G. § 5C1.2(5) makes clear, it is the burden of the defendant to provide pertinent information, no later than the time of the sentencing hearing. Defendant failed to do so in the present case. The district court is affirmed on this issue.

### V.

To conclude, the district court is **AFFIRMED** in part and **REVERSED** in part. The district court's failure to raise the safety valve issue is **AFFIRMED.** The district court's attribution of 1029 marijuana plants to defendant is **REVERSED,** and the case is **REMANDED** to the district court for proceedings consistent with this opinion.