RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0192P (6th Cir.)
File Name: 03a0192p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

Nos. 01-2028/2162

BRIAN BROWN (01-2028) and
KEVIN COURTNEY (01-2162),
*Defendants-Appellants.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 99-80035—Gerald E. Rosen, District Judge.

Argued: May 8, 2003

Decided and Filed: June 11, 2003

Before: KENNEDY, SILER, and GILMAN, Circuit
Judges.

_____

## COUNSEL

**ARGUED:** Suzanna Kostovski, Detroit, Michigan, John K.
West, McCOY, WEST, FRANKLIN & BEAL, Lexington,
Kentucky, for Appellants. J. Michael Buckley, UNITED
STATES ATTORNEY, Detroit, Michigan, for Appellee.
**ON BRIEF:** Suzanna Kostovski, Detroit, Michigan, John K.

West, McCOY, WEST, FRANKLIN & BEAL, Lexington,
Kentucky, for Appellants. J. Michael Buckley, UNITED
STATES ATTORNEY, Detroit, Michigan, for Appellee.

_____

## OPINION

_____

KENNEDY, Circuit Judge. Defendants-Appellants Brian
Brown and Kevin Courtney appeal from their conviction and
sentencing for conspiracy to distribute more than 50 grams of
cocaine base. Brown also appeals from the district court's
denial of his motion for a new trial. We affirm the jury's
verdict and the district court's sentence.

### I.

Brown and Courtney were indicted by a federal grand jury
on January 20, 1999. The indictment alleged that between
1987 and 1999 Brown and Courtney were part of a multi-
person conspiracy to distribute cocaine and cocaine base
(crack cocaine) in violation of 21 U.S.C. § § 841(a)(1), 846.
Specifically, the government alleged that several persons –
including Shawn McKinney (a.k.a. "Click"), Roy Wells
(a.k.a. "Joe Joe"), Richard Simpson, Sondra Jackson, Michael
Moore, and the Defendants, among others – were involved in
a conspiracy to pool their money to purchase powder cocaine,
to distribute it, and to cook some of it into cocaine base for
distribution. A superseding indictment was filed to include
drug quantities exceeding 5 kilograms of cocaine and 50
grams of cocaine base (crack cocaine).

Because the indictment did not list the particular acts
forming the basis of Brown's participation in the conspiracy,
the district court ordered the government to file a Bill of
Particulars. The first Bill of Particulars identified only an
alleged drug transaction between April and June of 1992 ("the
1992 transaction") involving Brown and an FBI informant.
The 1992 transaction had been the subject of a prior

indictment, which had been dismissed with prejudice by the federal district court for violations of Brown's constitutional and statutory right to a speedy trial. *United States v. Brown*, 985 F. Supp. 722 (E.D. Mich. 1997), *aff'd*, 169 F.3d 344 (6th Cir. 1999). Brown filed a motion to exclude evidence referring to activities underlying the 1992 indictment, and filed a motion to require the government to furnish more information regarding the alleged conspiracy in the present indictment. The district court ordered the government to file a supplemental Bill of Particulars. The second Bill identified two witnesses, Donnell Simpson and Ronald Simpson, who allegedly would testify to drug transactions in 1992, 1993, and 1994. The district court denied Brown's motion to exclude the evidence relating to the 1992 indictment without prejudice so that Brown could object at trial under Federal Rule of Evidence 404(b) to the government's attempt to introduce such evidence. At trial, Brown succeeded on that motion.

Brown also filed a pre-trial motion to dismiss the indictment based on *Apprendi v. New Jersey*, 530 U.S. 466 (2000). Although the superceding indictment set forth a specific range of drug quantities (i.e., "more than 50 grams of cocaine base"), Brown argued: (1) that *Apprendi* required the government to allege a specific quantity, not merely a range; (2) that the jury must be given a special verdict form separating out the cocaine and cocaine base charges; and (3) that *Apprendi* requires the government to allege the particular subsection of 21 U.S.C. § 841(b) under which it seeks to prosecute. The district court denied this motion shortly before trial. However, it gave the jury a special verdict form.

On January 30, 2001, Brown and Courtney were convicted by a jury of conspiracy to distribute more than 50 grams of cocaine base. They were found not guilty of conspiracy to distribute more than 5 kilograms of powder cocaine.

At Courtney's sentencing, the district court assigned a base offense level of 32 and a two-point enhancement for

possession of a firearm, resulting in a total base offense level of 34. Courtney was sentenced to 151 months — the bottom of the guidelines range. At Brown's sentencing, the district court initially assigned a base offense level of 32. The district court found by a preponderance of the evidence that Brown's involvement in the 1992 transaction was relevant conduct, and thus attributed an additional fourteen kilograms of cocaine to Brown, raising his base offense level to 34. Brown was sentenced to 188 months — the top of the guidelines range.

After retaining new counsel, Brown filed a motion for a new trial, which was denied.[1] The court also declined to construe Brown's motion for a new trial as a 28 U.S.C. § 2255 motion, reasoning that such a motion should not be considered by the district court while Brown's direct appeal was pending. Courtney filed a motion for new trial based on ineffective assistance of counsel, which was also denied. Defendants' various appeals have been consolidated in this present action.

## II. Ineffective Assistance of Counsel

Brown argues that his trial counsel provided ineffective assistance by failing to raise a defense based on the statute of limitations, by failing to object to jury instructions that constructively amended the indictment, and by permitting adverse testimony to be introduced at trial.[2] Generally, we "do not consider ineffective assistance of counsel claims on direct appeal, because the record usually is not sufficiently developed to permit proper assessment of such claims." *United States v. Neuhausser*, 241 F.3d 460, 474 (6th Cir.

---

[1] Specifically, the court denied Brown's claims of ineffective assistance of counsel and prosecutorial misconduct as untimely, and denied his claims of *Apprendi* violations on the merits.

[2] Courtney has not appealed from the denial of his motion for new trial based on ineffective assistance of counsel.

2001). "This rule stems from the fact that a finding of prejudice is a prerequisite to a claim for ineffective assistance of counsel, and appellate courts are not equipped to resolve factual issues. As a result, our court has routinely concluded that such claims are best brought by a defendant in a post-conviction proceeding under 28 U.S.C. § 2255 so that the parties can develop an adequate record on this issue." *United States v. Aguwa*, 123 F.3d 418, 423 (6th Cir. 1997). The fact-intensive nature of Brown's claim of ineffective assistance weighs in favor of our usual rule. We therefore decline to consider these claims on direct appeal.

### III. Errors Relating to the Indictment and Trial

#### A. *Apprendi* Issues

Brown argues that the indictment was in violation of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), because it did not specifically reference the penalty provisions of 21 U.S.C. § 841(b). *Apprendi* requires that all facts that increase the penalty for a crime beyond the statutory maximum be submitted to a jury and proved beyond a reasonable doubt. Based on *Apprendi*, Brown argues that the penalties under 21 U.S.C. § 841(b) are essential elements of the offense, and, therefore, must be explicitly alleged in the indictment. There is no support in *Apprendi* for requiring an indictment to reference the penalty provisions of § 841(b) where the indictment properly sets forth specific drug quantities and puts the defendant on notice of all the elements of the offense that would increase the penalty for the crime beyond the statutory maximum. Therefore, there is no *Apprendi* error.

#### B. *Brady* Material

At trial, it became known that one of the government's witnesses, Donnell Simpson, had sent a letter to DEA Agent James Doby regarding the possibility of providing information concerning this case in exchange for a reduction in his sentence. This letter was lost by the government. Courtney claims that the failure of the government to produce

this letter requires reversal of his conviction under *Brady v. Maryland*, 373 U.S. 83, 87 (1963) (holding that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution"). *See also United States v. Bagley*, 473 U.S. 667, 676 (1985) (holding that *Brady* applies to impeachment evidence). We review the denial of a *Brady* claim *de novo*. *United States v. Corrado*, 227 F.3d 528, 538 (6th Cir. 2000).

In order to succeed on a *Brady* claim, the defendant must show that the evidence was "material either to guilt or punishment." *Brady*, 373 U.S. at 87. Evidence is material where there is a "reasonable probability" that it would have produced a different result. *Bagley*, 473 U.S. at 678, 682; *Kyles v. Whitney*, 514 U.S. 419, 434 (1995). Courtney does not make any attempt to demonstrate the materiality of the letter, and there is no obvious indication that the contents of the letter would have produced a not-guilty verdict. Moreover, we have held that there is no *Brady* violation where the evidence is available from another source. *See United States v. Clark*, 928 F.2d 733, 738 (6th Cir. 1991). Both Agent Doby and Donnell Simpson testified and were cross-examined regarding the contents of the letter. Although it may be true, as Courtney argues, that the letter itself would have been more valuable as impeachment evidence, this marginal comparative benefit is even less likely to have produced a different verdict. Therefore, there is no *Brady* error.

Just before oral argument, Brown filed a supplemental argument in support of a new trial. Brown's supplemental argument alleges: (a) that the government failed to disclose that it was filing motions under Fed. R. Crim. P. 35 to reduce Ronald and Donnell Simpson's sentence in exchange for their assistance in Brown and Courtney's trial; (b) that these motions were filed more than one year after the Simpsons' sentences were imposed; (c) that the government was not

permitted to file such a motion more one year after sentence was imposed; and (d) that, therefore, the government's failure to disclose its intent to file these motions was Brady error because Brown might have been able to convince the Simpsons to change their testimony on cross-examination if Brown had been able to tell them that the Rule 35 motions were in error. The logic of this argument fails on several levels. First, the trial transcripts clearly reveal that Brown was aware that the Simpsons were being offered Rule 35 motions in exchange for their testimony. Second, Brown makes no showing of a "reasonable probability" that this information would have produced a different result. Finally, we note that Rule 35 has since been amended to ease the one-year filing requirement.

## C. The Jury's Exposure to a Non-Evidentiary Document

During the course of the trial, the jurors were exposed to a non-evidentiary document concerning drug prosecutions, not relating to the trial. That document was an article entitled, "Why Low Level Black Drug Offenders Go To Prison; Why the War on Drugs is Failing." In response, the district court conducted an individual voir dire of each juror to determine if the article had caused any taint. The district court found that there was no improper influence on the jury. No party objected to the voir dire or to the district court's conclusion that the jury was untainted.

Exposure of the jury to prejudicial literature concerning the trial can be grounds for a mistrial. *See, e.g., Marshall v. United States*, 360 U.S. 310 (1959). The literature in this case did not concern the trial itself, and Courtney does not explain how it was prejudicial. Rather than challenge the document itself, Courtney alleges that the manner in which the district court conducted the voir dire encouraged the jury to believe that the defendants had deliberately left the article in the jury room in order to improperly influence the jury.

Because Courtney failed to raise this objection in the district court, we are confined to plain error review. Fed. R. Crim. P. 52(b). To establish plain error, a claimant must show: (1) error, (2) that is plain, (3) that affects the defendant's substantial rights, and (4) that "seriously affect[s] the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Cotton*, 535 U.S. 625, 631 (2002); *Johnson v. United States*, 520 U.S. 461, 466-67 (1997); *United States v. Owusu*, 199 F.3d 329, 339 (6th Cir. 2000). Having cited no evidence that the voir dire caused any juror to believe that the defendants were responsible for planting the article, and no cases indicating that such a voir dire is improper, Courtney has not demonstrated any plain error.

## D. Jury Instructions on Uncharged Offenses

In relation to the conspiracy count, the district court instructed the jury as follows:

> Count One of the first superceding indictment accuses the defendants of a conspiracy to commit the crime of distribution of cocaine and cocaine base in violation of federal law. . . . For you to find any one of these defendants guilty of the conspiracy charged in Count One, the Government must prove each and every one of the following elements beyond a reasonable doubt.

> First, that two or more persons did conspire or agree to commit the crime of distribution of cocaine and cocaine base. In other words, the conspiracy, itself, has to be proven first, or the agreement. . . .

> With regard to the first element – I want to put some flesh on the bone. With regard to the criminal agreement, the Government must prove that two or more persons conspired or agreed to cooperate with each other – to cooperate with each other to commit the crime of possession with intent to distribute or to distribute.

Brown argues that the district court violated the Fifth Amendment by referring to conspiracy to possess with intent to distribute when the indictment only charged him with conspiracy to distribute. He claims that the added reference to possession with intent substantially prejudiced him by constructively amending the indictment.

Because Brown failed to object to this instruction in the district court, we are again confined to plain error review. *Cotton*, 535 U.S. at 631. The Fifth Amendment protects defendants from being convicted of an offense different from that which was included in the indictment. *United States v. Miller*, 471 U.S. 130, 142 (1985) (holding that "a conviction cannot stand if based on an offense that is different from that alleged in the grand jury's indictment"). We have held that a constructive amendment to the indictment violates that Fifth Amendment right; "[a] constructive amendment occurs when the terms of an indictment are in effect altered by the presentation of evidence and jury instructions which so modify essential elements of the offense charged that there is a substantial likelihood that the defendant may have been convicted of an offense other than that charged in the indictment." *United States v. Hathaway*, 798 F.2d 902, 910 (6th Cir. 1986).

In order to prevail, Brown must show that the jury instruction created "a substantial likelihood" that he was convicted of an offense separate and distinct from the ones charged in the indictment. At least one circuit has held that the crime of possession with intent to distribute is distinct from the crime of distribution. *See United States v. Carter*, 576 F.2d 1061, 1064 (3d Cir. 1978). Even assuming that this is good law, Brown's argument fails because he cannot show "a substantial likelihood" that he was convicted of conspiracy to possess with intent to distribute, rather than conspiracy to distribute. First, the district court stated three times that the underlying offense of the conspiracy was distribution. Second, the special verdict form specifically indicated that the jury voted to convict of conspiracy to distribute. The court

even walked the jury through the form, line by line. Third, the indictment clearly indicated that the conspiracy was only related to distribution, and the jurors were given a specific instruction to limit their verdict to crimes charged in the indictment.

These facts are clearly distinguishable from the case which Brown cited, *United States v. Solis*, 841 F.2d 307 (9th Cir. 1988). In *Solis*, the defendants were charged with the crime of distribution, but the jury was given an additional instruction that it could convict for the uncharged offense of possession with intent to distribute. *Id.* at 308. The jury merely returned a verdict of guilty "as to count 4." *Id.* at 309. Although "count 4" was distribution, the Ninth Circuit reasoned that the verdict as stated was "unenlightening as to whether the jury was under the impression, due to the additional instructions, that they could convict on count 4 if they found possession with intent to distribute." *Id.* In the instant case, considering the instructions as a whole and the specificity of the special verdict form, there is very little chance that the jury mistakenly convicted Brown of the wrong conspiracy. Therefore, there is no Fifth Amendment violation or, certainly, no plain error affecting substantial rights.

### E.    Sufficiency of the Evidence

In a challenge to the sufficiency of the evidence, we ask "whether, after viewing the evidence in the light most favorable to the prosecution any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *United States v. Jones*, 159 F.3d 969, 979 (6th Cir. 1998).

### 1.    Specific Intent to Join

Defendants argue that there was not sufficient evidence to prove that they specifically intended to join the conspiracy. Specific intent to join is an essential element of the crime of conspiracy. *United States v. Elder*, 90 F.3d 1110, 1120 (6th

Cir. 1996). "Proof of knowledge is satisfied by proof that the defendant knew the essential object of the conspiracy . . . . Every member of a conspiracy need not be an active participant in every phase of the conspiracy, so long as he is party to the general conspiratorial agreement." *United States v. Christian*, 786 F.2d 203, 211 (6th Cir. 1986) (quoting *United States v. Cuni*, 689 F.2d 1353, 1356 (11th Cir. 1982)). "A defendant's guilty knowledge and voluntary participation may be inferred from surrounding circumstances." *Id*. However, "mere association with conspirators is not enough to establish participation in a conspiracy." *United States v. Pearce*, 912 F.2d 159, 162 (6th Cir. 1990).

### a. Defendant Courtney

There is sufficient evidence to support a jury's finding that Courtney specifically intended to join the conspiracy. Donnell Simpson testified that he bought cocaine from Courtney, that Courtney was responsible for "counting money" and "measuring dope" for co-conspirators Shawn McKinney, Richard Simpson and Roy Wells, that he saw Courtney selling kilos of cocaine at his mother's house with Richard Simpson and Roy Wells, and that all three men had guns and were wearing bullet proof vests. As Donnell put it, "one would take the money, one weighed the stuff up. And that's how they did it." Ronald Simpson testified that Courtney would pick up and deliver kilos of cocaine for him, McKinney, Wells, and Richard Simpson, that Courtney would occasionally sell powder cocaine for Richard Simpson, and that Courtney was Simpson's "right hand man." He also testified that the co-conspirators cooked powder cocaine into cocaine base at Courtney's home. Sondra Jackson testified that she saw Courtney cook cocaine into crack cocaine for distribution, that Courtney approached her on three occasions about making trips to Miami to purchase cocaine for the conspirators, and that before one of those trips he placed over $100,000 of Richard Simpson's money on her body. This provides ample evidence that Courtney specifically intended to participate in the conspiracy.

### b. Defendant Brown

The evidence overwhelmingly establishes Brown's role as a source of drugs and money for the conspiracy. Both Donnell Simpson and Ronald Simpson testified that they bought powder cocaine from Brown, and later processed that powder cocaine into cocaine base for distribution. Donnell Simpson testified that Shawn McKinney was with Brown on at least one of those occasions. Ronald Simpson also testified that Brown was a source of Shawn McKinney's cocaine, which Brown gave to McKinney on consignment so that McKinney and others could re-sell it.

Brown raises two arguments relating to his specific intent to join: (1) that Brown's relationship to the other conspirators was nothing more than a buyer-seller relationship; and (2) that there was insufficient evidence to support the jury's finding that Brown was involved in a conspiracy to distribute crack, rather than merely powder cocaine.

A mere buyer-seller relationship alone is insufficient to establish a conspiracy. *United States v. Anderson*, 89 F.3d 1306, 1310 (6th Cir. 1996). However, evidence of repeat purchases provides evidence of more than a mere buyer-seller relationship. *Id*. (quoting *United States v. Baker*, 905 F. 2d 1100, 1106 (7th Cir. 1990)). Moreover, "[a] large volume of narcotics creates an inference of conspiracy." *United States v. Bourjaily*, 781 F.2d 539, 545 (6th Cir. 1986). The evidence at trial established that the conspirators had a regular arrangement with Brown to purchase very large quantities of powder cocaine. This goes beyond a mere buyer-seller relationship and provides sufficient evidence to support the jury's verdict.

Brown is right to point out that no witness specifically testified that he knew the conspirators cooked some of the cocaine into crack. However, the government did not need to prove that Brown actively participated in the cooking of powder cocaine into crack, and "guilty knowledge and

voluntary participation may be inferred from surrounding circumstances." *Christian*, 786 F.2d at 211. Given the close relationships among the conspirators and the repeated transactions, there was sufficient circumstantial evidence for a rational jury to infer that Brown knew the general gist of the conspiracy when he chose to participate.

## 2. The Statute of Limitations

The crime of conspiracy carries a five year statute of limitations. 18 U.S.C. § 3282. The indictment was filed on January 20, 1999. In order to carry its burden at trial, the government had to show beyond a reasonable doubt that the specific conspiracy Brown and Courtney joined was on-going after January 20, 1994. *See United States v. Shabani*, 513 U.S. 10, 14 (1994); *Grunewald v. United States,* 353 U.S. 391, 397 (1957). Such a showing establishes a "presumption of continuity" and attaches liability to Brown and Courtney for the subsequent acts of their co-conspirators. *See United States v. Myers*, 512 F.2d 637, 642 (6th Cir. 1975) (holding that "where a conspiracy contemplates a continuity of purpose and a continued performance of acts, it is presumed to exist until there has been an affirmative showing that its has terminated").

There was no evidence at trial indicating any overt act by either Brown or Courtney within that period. However, there was evidence of overt acts within that period by other co-conspirators. Specifically, Joseph Simpson testified that Richard Simpson asked him to drive to Florida to buy cocaine in 1994, and that the government seized two kilograms of cocaine from Richard Simpson and Michael Moore in 1998.[3] The crucial question is whether a rational jury could have found that the overt acts undertaken by Defendants co-

---

[3]Although we do not know whether Joseph Simpson is referring to an act that took place before or after the first 20 days of 1994, our analysis would not be any different if the 1998 seizure were the only act undertaken within the statute of limitations period.

conspirators during the statute of limitations period were in furtherance of the general conspiratorial agreement entered into by Defendants. Given that the timely acts of the co-conspirators share the same character and purpose of the general conspiracy for which Defendants were indicted, we cannot say that there was insufficient evidence to support the presumption of continuity.

The presumption of continuity does not carry the same force for every member of a conspiracy. This is particularly true in large scale drug conspiracies where levels of participation vary greatly among the conspirators. Where a conspirator is "deep in the general business of the 'ring'," the presumption of continuity is the strongest. *See United States v. Reina*, 242 F.2d 302, 305-06 (2d Cir. 1957). At least one other circuit has suggested that, at some point, the lack of evidence of participation in a conspiracy by a low-level drug conspirator for a substantial period of time suffices to extinguish the presumption of continuity. *See United States v. Borelli*, 336 F.2d 376, 384 (2d Cir. 1964) (noting that "however reasonable the so-called presumption of continuity may be as to all the participants of a conspiracy which intends a single act, such as the robbing of a bank . . ., its force is diminished as to the outer links -- buyers indifferent to their sources of supply and turning from one source to another, and suppliers equally indifferent to the identity of their customers"). We cannot say in this case, however, that either Defendant was enough of an "outer link" to make it irrational for a jury to apply the presumption of continuity and convict.

The presumption of continuity can also be extinguished by the affirmative defense of withdrawal. *United States v. Lash*, 937 F.2d 1077, 1083 (6th Cir. 1991). The defendant carries the burden of proving withdrawal, and must show that he "took affirmative action to defeat or disavow the purpose of the conspiracy." *Id*. Without such action, liability continues for all actions in furtherance of the conspiracy by other conspirators. "[A] full confession to authorities or a communication by the accused to his co-conspirators that he

has abandoned the enterprise and its goals" would be evidence sufficient to show affirmative action. *United States v. Juodakis*, 834 F.2d 1099, 1102 (1st Cir. 1987). "Mere cessation of activity is not sufficient." *Lash*, 937 F.2d at 1083. Neither Brown nor Courtney raised a defense based on withdrawal at trial. Therefore, the evidence presented to the jury was sufficient to support the verdict.

### F.   Prosecutorial Misconduct

In its supplemental Bill of Particulars, the government stated that Ronald Simpson would testify that he purchased cocaine from Brown in both 1993 and 1994. The government based this information on an interview with Ronald Simpson. The record does not contain any transcript of or notes regarding this interview. On January 26, 2000, five days after the second Bill of Particulars was filed, the government re-interviewed Ronald Simpson. This time, Simpson stated that he purchased cocaine from Brown "dating back to 1993." The government disclosed the report of their second interview to defense counsel. At trial, Ronald Simpson testified that he was not sure of the dates on which he purchased cocaine from Brown. It appears from the record that Ronald Simpson's testimony was the only evidence on which the government based its claim that Defendant Brown committed any overt acts within the five-year statute of limitations period for conspiracy.

Brown argues that the prosecutor deliberately lied when, in the second Bill of Particulars, she stated that Ronald Simpson would testify to transactions as late as 1994. Brown asserts that there was absolutely no evidence in the record to support this fact, and that the prosecutor's assertion was maliciously designed to circumvent the statute of limitations.

Brown must show actual prejudice. *United States v. Griffith*, 756 F.2d 1244, 1249 (6th Cir. 1985). Brown alleges prejudice in that he was prevented from raising a defense based on the statute of limitations. There is no reason that the alleged misconduct of the prosecutor prevented Brown from raising this defense at trial.[4] Thus, there is no prejudice.

Brown and Courtney also allege that the prosecutor committed misconduct by failing to instruct the grand jury that it must find evidence of specific acts within the limitations period. We cannot reverse on this basis in any case since errors of this nature by the prosecution before the grand jury are *per se* harmless where the defendant is subsequently convicted by the petit jury. *United States v. Mechanik*, 475 U.S. 66 (1986); *United States v. Cobleigh*, 75 F.3d 242, 251 (6th Cir. 1996).

### IV.   Sentencing Issues

### A.   Relevant Conduct

Brown argues that the district court was not permitted to find that the facts underlying the 1992 indictment for distribution of cocaine were relevant conduct for the purposes of sentencing. We review a district court's findings of fact regarding the conduct for clear error, and review the determination that the conduct in question was relevant conduct *de novo*. *United States v. Myers*, 123 F.3d 350, 364 (6th Cir. 1997). In this case, Brown does not challenge the district court's factual findings but only the legal question of whether the conduct may be considered relevant for the purpose of sentencing.

Prior drug dealings are relevant conduct if they constitute a "common scheme or plan" or are "part of the same course of conduct." U.S.S.G. §1B1.3(a)(2). Two or more offenses constitute a "common scheme or plan" if they are "substantially connected to each other by at least one common factor, such as common victims, common accomplices,

---

[4]The fact that Brown's trial counsel chose not to raise a defense based on the statute of limitations is the subject of his claim of ineffective assistance of counsel.

common purpose, or similar modus operandi." U.S.S.G. §1B1.3, comment. (n.9). Two or more offenses constitute the "same course of conduct" if they are "sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses." *Id*.[5] The district court found by a preponderance of the evidence that Brown was responsible for an additional fourteen kilograms of powder cocaine based on evidence that Brown purchased that quantity from an FBI confidential informant in 1992. Because both the conduct and the underlying offense were transactions involving cocaine, the district court did not err in finding the conduct relevant.

### B. Whether the Cocaine Base Was Crack

Brown was sentenced for crack cocaine. He argues that there was not sufficient evidence to show that the cocaine base involved in the conspiracy was crack cocaine. At sentencing, the question of whether a particular substance is crack or another form of cocaine is a fact question to be determined by the district court and reviewed for clear error only. *United States v. Jones*, 159 F.3d 969, 982 (6th Cir. 1998). Because Brown did not raise an objection below, we review for plain error only. There was no plain error in this case. Throughout the trial, key witnesses Donnell Simpson and Ronald Simpson referred to their practice of cooking into crack the cocaine that they purchased from sources including Brown. A DEA forensic chemist testified that the drugs seized from co-conspirators Richard Simpson and Michael

---

[5]Brown cites *United States v. Hoskins*, 173 F.3d 351, 355 (6th Cir. 1999), for the proposition that only drugs involved in the charged conspiracy may be considered relevant conduct for the purposes of sentencing. *Hoskins* dealt with review of a district court's determination of drug quantity at sentencing, and does not hold that all relevant conduct must involve transactions related to the charged conspiracy. In fact, such a rule would run counter to the Guidelines' provision that "conduct that is not formally charged or is not an element of the offense of conviction" may be considered as relevant conduct. U.S.S.G. § 1B1.3, comment. n.10.

Moore were crack cocaine. Thus, there was evidence in the record establishing that the cocaine base was crack cocaine.

### C. Sentence Enhancement for Possession of a Dangerous Weapon

The Sentencing Guidelines provide for a two-point enhancement for possession of a dangerous weapon during a drug trafficking offense. U.S.S.G. §2D1.1(b)(1). This enhancement only applies where "(1) the defendant actually or constructively 'possessed' the weapon, and (2) such possession was during the commission of the offense." *United States v. Bender*, 265 F.3d 464, 474 (6th Cir. 2001). We review a district court's factual determination at sentencing that a defendant "possessed" a weapon for clear error. *United States v. Hill*, 79 F.3d 1477, 1481 (6th Cir. 1996). Donnell Simpson testified at trial that he saw Courtney in the basement of a crack house wearing a bullet-proof vest and in possession of a firearm and five kilograms of cocaine. Sondra Jackson, a co-conspirator, and Ronald Simpson also testified that Courtney carried a gun. In light of these facts, the district court's factual determination was not clearly erroneous.

For the forgoing reasons, we AFFIRM the jury's conviction and district court's sentencing of Defendants Brown and Courtney.