NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0218n.06

No. 19-5371

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
| | ) | Apr 16, 2020 |
| Plaintiff-Appellee, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| JIMMY MCLAIN MOORE, | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF TENNESSEE |
| Defendant-Appellant. | ) | |
| | ) | |

Before: MOORE, KETHLEDGE, and BUSH, Circuit Judges.

KETHLEDGE, Circuit Judge. A jury found Jimmy McLain Moore guilty of conspiracy to distribute methamphetamine, for which the court imposed a within-Guidelines sentence. Moore says that his trial was unfair, that the evidence against him was insufficient to support the jury's verdict, and that the court incorrectly calculated his sentencing range. We reject his arguments and affirm.

I.

In January 2017, a sheriff's deputy in Monroe County, Tennessee, pulled over a suspected methamphetamine dealer, Jamie Cook, for a traffic violation. With Cook's consent, the deputy searched Cook's pockets and found a postal receipt showing that Cook had mailed a package to Jimmy Moore in California. Cook said the package contained $2,400, which he had sent to Moore in exchange for a package of methamphetamine that would be arriving soon. With Cook's cooperation, investigators then listened in on several calls in which Cook and Moore discussed

(albeit cryptically) plans to ship methamphetamine. Those plans included a package of methamphetamine that Moore had recently mailed to Gary Holder, who would pass its contents on to Cook.

The package arrived a few days later. Postal Inspector Wendy Boles gave the package to Holder after checking his identification. A sheriff's deputy promptly pulled Holder over as he drove away. A drug-detection dog alerted to the presence of drugs inside the car. Holder consented to a search of the car and the package. Inside the package, the deputy found, wrapped in bags of grease, 442 grams of methamphetamine.

Holder then consented to a search of his home, where the police found more bags of grease along with labels from earlier packages. Holder also showed the police text messages from Moore, which contained tracking numbers for packages sent previously and instructions as to how Holder should send cash back to Moore. Boles determined from postal records that, over the previous year, Moore or someone with his address or phone number had sent at least 17 packages to Holder or Cook.

The government thereafter charged Moore with conspiring to distribute at least 50 grams of methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1), and (b)(1)(A). Before trial, Moore moved to suppress the meth from the intercepted package and his recorded conversations with Cook. The court denied those motions. A jury convicted Moore on all charges.

At sentencing, the court found that Moore was responsible for more than 1.5 kilograms of methamphetamine, which, together with his criminal history, yielded a Guidelines range of 292 to 365 months in prison. The court sentenced Moore to 292 months. This appeal followed.

## II.

## A.

Moore argues that the district court should have granted his motion to suppress the methamphetamine found in Holder's car. With respect to that denial, we review the district court's findings of fact for clear error and its conclusions of law de novo, while viewing the record in the light most favorable to the district court's decision. *See United States v. Marrero*, 651 F.3d 453, 468 (6th Cir. 2011). Moore contends specifically (if implausibly) that he retained a privacy interest in the contents of the package he mailed to Holder even after Holder picked it up, and that the deputy's warrantless search of the package violated the Fourth Amendment. We dispose of that argument simply by observing that the search of Holder's car and its contents was lawful if the officer had probable cause to conduct the search, which he did once the dog alerted. *See United States v. Winters*, 782 F.3d 289, 304 (6th Cir. 2015). Hence the court properly denied Moore's motion to suppress.

Moore next challenges the admission of recordings of his calls with Cook as evidence at trial. First, Moore argues, the recordings were unintelligible and thus unreliable. But a recording is admissible if it is trustworthy "as a whole." *United States v. Adams*, 722 F.3d 788, 823 (6th Cir. 2013). Here, the government conceded that parts of the calls were unintelligible, which the government labeled as "UI" in transcripts of the calls. Moore stipulated to the accuracy of those transcripts in their entirety—intelligible and "unintelligible" portions alike—which shows that he thought the recordings "as a whole" were trustworthy. *See id.* The court therefore did not abuse its discretion by reaching the same conclusion.

Second, Moore argues that the admission of the phone recordings violated the Sixth Amendment's Confrontation Clause because Cook's statements on the calls were hearsay. To

answer that argument on its terms: as the district court correctly found, most of Cook's statements on the call took the form of questions, which are not hearsay, *see United States v. Rodriguez-Lopez*, 565 F.3d 312, 314-15 (6th Cir. 2009); and otherwise the recordings were admitted not "to show the truth of the matters asserted, but to provide context for" Moore's admissions during the calls, *see United States v. Henderson*, 626 F.3d 326, 337 (6th Cir. 2010). Moore's argument is meritless.

B.

Moore argues that the government lacked sufficient evidence to prove that he conspired to distribute methamphetamine. That presents the question "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

To prove a conspiracy under 21 U.S.C. § 846, the government must show beyond a reasonable doubt the existence of "an agreement to violate the drug laws, the defendant's knowledge of the agreement, and the defendant's decision to voluntarily join (or 'participate in') it." *United States v. Potter*, 927 F.3d 446, 453 (6th Cir. 2019). "The existence of a conspiracy may be inferred from circumstantial evidence that can reasonably be interpreted as participation in the common plan." *United States v. Deitz*, 577 F.3d 672, 677 (6th Cir. 2009).

At trial, Holder testified that he regularly sent money to Moore, that Moore sent packages of methamphetamine in return, and that Cook and others would pick up the drug and resell it. The jury also heard recordings of calls in which Cook and Moore discussed methamphetamine shipments and the drug's price. And the jury saw postal records, text messages, and mailing labels that showed Moore's participation in a common plan to distribute methamphetamine. Suffice it to say that the jury had sufficient evidence to find that Moore conspired to do precisely that.

Yet Moore says that he had a "buyer-seller" relationship with Cook and Holder rather than a conspiratorial one. *See United States v. Brown*, 332 F.3d 363, 373 (6th Cir. 2003). But here the evidence showed an "enduring" arrangement in which Moore and others distributed large quantities of methamphetamine. *See Dietz*, 577 F.3d at 680. The jury could find from that evidence that Moore's involvement went "beyond a mere buyer-seller relationship." *Brown*, 332 F.3d at 373.

## C.

Finally, Moore challenges the quantity of drugs that the district court attributed to him at sentencing. We review the district court's finding for clear error. *See United States v. Woodside*, 895 F.3d 894, 902 (6th Cir. 2018). The court heard testimony that Moore sent 17 packages to Holder and Cook; that all those packages contained methamphetamine; that the postal records showed the total weight of the packages Moore had mailed; and that, after accounting for the weight of packing materials, those packages had contained more than 1.5 kilograms of methamphetamine. That testimony provided an ample basis for the district court's determination of the quantity of drugs for which Moore was responsible. *See United States v. Jeross*, 521 F.3d 562, 570 (6th Cir. 2008).

\* \* \*

The district court's judgment is affirmed.