NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0759n.06
Filed: August 30, 2005

Case Nos. 03-2264 and 03-2290

IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff - Appellee, | ) | |
| | ) | |
| | ) | **ON APPEAL FROM THE** |
| v. | ) | **UNITED STATES DISTRICT** |
| | ) | **COURT FOR THE EASTERN** |
| STEVEN FANTROY AND | ) | **DISTRICT OF MICHIGAN,** |
| ANTONIO AMEEN, | ) | **SOUTHERN DIVISION** |
| Defendant-Appellants. | ) | |
| | | **OPINION** |

BEFORE: DAUGHTREY and GIBBONS, Circuit Judges; SARGUS, District Judge[*]

SARGUS, District Judge. Defendant-Appellant Steven Fantroy appeals his convictions

on charges of conspiracy to distribute powder and crack cocaine as well as heroin, 21 U.S.C. §

846, money laundering, 18 U.S.C. § 1956(a)(1)(A), and possession with intent to distribute

powder and crack cocaine, 21 U.S.C. § 841(a)(1). Defendant-Appellant Antonio Ameen appeals

his conviction on charges of conspiracy to distribute powder and crack cocaine, as well as

heroin, and two counts of money laundering. Both Appellants contend that they were deprived

of their constitutional right to a jury selected from a fair cross section of the community. Fantroy

and Ameen also assert that the sentences they received were imposed under sentencing

guidelines found to be unconstitutional in *United States v. Booker*, 125 S. Ct. 738 (2005).

---

[*]The Honorable Edmund A. Sargus, Jr., United States District Judge for the Southern District of Ohio,
Eastern Division, sitting by designation.

Finally, Ameen appeals three decisions of the district court involving (1) an alleged failure of the prosecutor to disclose, prior to trial, exculpatory oral statements allegedly made by Ameen; (2) the admission of testimony indicating that he had killed a man; and (3) the failure to include within the jury instructions reference to the statute of limitations regarding unlawful conspiracy.

For the reasons that follow, the convictions of Fantroy and Ameen are affirmed. This case is remanded to the district court for resentencing under *Booker v. United States, supra.*

## I.

In 1993, federal agents began an investigation of a drug conspiracy based in Detroit, Michigan. On June 24, 1998, Steven Fantroy, Antonio Ameen, and thirteen other individuals were indicted for multiple crimes related to this conspiracy. Fantroy and Ameen proceeded to trial by jury, while thirteen co-defendants either pleaded guilty or died before going to trial. Several of the co-defendants testified against Fantroy and Ameen at trial. On August 9, 2001, the jury returned guilty verdicts against both Appellants. The jury found Fantroy guilty of drug conspiracy pursuant to 21 U.S.C. § 846, money laundering pursuant to 18 U.S.C. § 1956(a)(1)(A), and possession of cocaine with intent to distribute pursuant to 21 U.S.C. § 841(a)(1). Ameen was convicted of drug conspiracy pursuant to 21 U.S.C. § 846 and two counts of money laundering under 18 U.S.C. § 1956(a)(1)(A) and (B).

At trial, the government produced evidence showing that thirteen wire transfers of drug proceeds had been sent under the name of Steven Fantroy. Two co-conspirators, Mitchell and Wells, both testified that Fantroy had been involved in dealing drugs with them. Additionally, the ATF agent in charge of the investigation, Scott Toth, described the execution of a search warrant on an apartment with utilities listed in Fantroy's name. The apartment was devoid of all

2

furniture, containing only the equipment necessary for making and packaging crack cocaine. When the agents entered the apartment, Fantroy and two other co-conspirators were present. Fantroy did not have any drugs on his person, but was carrying $700.00 in cash. After searching the apartment, the federal agents found significant amounts of powder and crack cocaine and a small amount of heroin. They also found an address book in a closet, which contained a bag of crack cocaine, with Fantroy's name and the address of the apartment in the "personal profile" section.

Several co-defendants testified against Ameen, claiming that he was a leading member of a drug organization which ran several drug houses in Detroit as well as Ohio, Illinois, New York, and California. Jeffrey Wells testified that in about 1989, Ameen gave him crack cocaine to set up a "drug business" in Ohio. Wells claimed the Ohio business was closed a year later because of recurring shootouts. Wells further testified that, after the Ohio drug houses folded, Ameen supplied heroin which Wells, Mitchell, and others took to Buffalo, New York to sell. The government also presented evidence demonstrating that Ameen's drug activities continued once he moved to California. Wells testified that he visited Ameen several times to carry drug proceeds money to Ameen and to "talk about the drug business." (JA 481.) In 1998, Wells paid Tomeka Lawler to deliver suitcases of money from drug proceeds to Ameen's associates in California. Wells also sent wire transfers of drug money from Detroit and Chicago to Ameen's associates in California.

Barrett LaRoda, Ameen's alleged business partner in California, testified that, upon Ameen's request, he referred Ameen to a cocaine supplier in California. Ameen frequently hosted visitors from Detroit at his California house. On several occasions, these visitors brought

3

gift-wrapped boxes or duffel bags full of cash. LaRoda further testified that Ameen told him he left Detroit because, after being kidnapped, he had "taken care of" one of his kidnappers. According to LaRoda, he and Ameen did not have a genuine business partnership, but rather LaRoda helped Ameen show a legitimate source of income. Ameen wrote checks to LaRoda's business and then LaRoda paid Ameen a "salary."

Other co-conspirators gave testimony that supported the allegations of LaRoda and Wells. Arthur Miller testified that he deposited money from drug sales into an account Ameen had set up relating to his Detroit rental property. (JA 328-30) Jose Giboyeaux testified that he sold 15 to 20 kilograms of cocaine every two weeks to Ameen and had his agents deliver it to Ameen's workers in Chicago.

Ameen contended that he was once a troubled youth from Detroit, who was caught up in drug dealing at an early age, but then found his true love in music. While in his early teens, Ameen was introduced to Arthur Mitchell, and, with Mitchell's assistance, began selling drugs in increasing quantities. Mitchell was charged as Ameen's co-defendant and pleaded guilty. Ameen testified that he stopped dealing drugs in the mid-1980's and began focusing on music instead. In 1989, Ameen left Detroit and moved to California, purportedly for the dual goals of furthering his music career and escaping the drug business in Detroit. Ameen told the jurors he was kidnapped in early 1989 in Detroit by men looking for Mitchell. According to Ameen, the men only freed him after Mitchell "took care of them" by paying them off. After the kidnapping incident, Ameen married Mitchell's niece and moved to California. Once in California, Ameen moved into a house purchased by his father. He also embarked upon two business endeavors. He partnered with a musician named Maurice Wilcher to begin creating and selling music, and

4

later joined a business started by Barrett LaRoda which sold concert merchandise. Ameen also owned several rental properties in Detroit.

At trial, the jury convicted both Ameen and Fantroy. Both defendants were sentenced within the computed Sentencing Guideline range, with Ameen receiving 240 months and Fantroy receiving 210 months. Ameen and Fantroy now bring these timely appeals.

**II.**

**A.     Claims under the Jury Selection and Service Act and the Sixth Amendment Right to a Jury Composed of a Fair Cross Section of the Community.**

Both Appellants contend on appeal that the district court failed to follow the Jury Selection and Service Act of 1968 ("JSSA"), 28 U.S.C. § 1861, *et seq.*, thereby depriving them of their Sixth Amendment right to a trial before a jury representing a fair-cross section of the community. Appellants assert that, because the fifty-member jury pool contained only one African-American, the venire did not represent a fair cross section of the community.

This Court reviews challenges brought under the JSSA using the same standard as a Sixth Amendment claim that the jury did not represent a fair-cross section of the community. *United States v. Ovalle*, 136 F.3d 1092, 1099 (6th Cir. 1998). Both the Sixth Amendment and the JSSA guarantee "the right to grand and petit juries selected at random from a fair cross section of the community in the district or division wherein the court convenes." 28 U.S.C. § 1861; *Ovalle*, 136 F.3d at 1099.

The JSSA also requires that challenges to the venire in criminal cases be made " . . . before the voir dire examination begins, or within seven days after the defendant discovered or could have discovered, by the exercise of diligence, the grounds therefor, whichever is

earlier. . . ." 28 U.S.C. § 1867(a). Both Fantroy and Ameen raised their challenges under the JSSA after voir dire had begun, thereby beyond the time limitations contained in the statute.[1] We therefore hold that Appellants' claims under the JSSA are time-barred.

Appellants also failed to raise a timely fair-cross-section objection under the Sixth Amendment. A fair-cross-section constitutional challenge falls under the ambit of Federal Rule of Criminal Procedure 12(b)(3) and thus must be raised before the start of trial. *See Ovalle*, 136 F.3d at 1107.[2] As this Court has noted, "[f]ailure to raise an objection to the selection of the grand or petit jury prior to trial 'shall constitute waiver thereof, but the court for cause shown may grant relief from the waiver.'" *Id*. (quoting former-Fed. R. Crim. P. 12(f).)[3] By not raising the issue until after jury selection had begun, defendants waived their objection to the composition of the jury pool. *See id*. As the trial court noted, "no objection was made at a time when [the court] could have done anything about changing the selection process for the jury panel." (JA 1070.) While a court may grant a defendant relief in spite of a violation of Rule 12(b)(3), a showing must be made of both cause and actual prejudice. *See id.* Appellants have not put forth any evidence of cause for their failure to object timely to the venire. Thus, their

---

[1]The record is silent as to the precise time the challenges were made. The entire voir dire process is contained in 153 pages of the transcript; the challenge was made on page 47.

[2]Federal Rule of Criminal Procedure 12(b)(3)(B) provides that "a motion alleging a defect in the indictment or information. . . ." must be raised prior to trial. This Rule governs an untimely claim of discrimination in the selection of the grand jury, "even when such challenges are on constitutional grounds." *Davis v. United States*, 411 U.S. 233, 238 (1973) (citing *Shotwell Mfg. Co. v. United States*, 371 U.S. 341 (1963)). "'Challenges of the petit jury are treated the same as challenges of the grand jury.'" *Ovalle,* 136 F.3d at 1107 (quoting *United States v. Hearst*, 638 F.2d 1190, 1196 (9th Cir.1980)).

[3]Current Rule 12(e) is substantially similar to former Rule 12(f). Rule 12(e) provides that "[a] party waives any Rule 12(b)(3) defense, objection, or request not raised by the deadline the court sets . . . . For good cause, the court may grant relief from the waiver." Fed. R. Crim. P. 12(e).

6

constitutional fair-cross-section challenge is barred for lack of a timely objection.[4] The decision

of the district court in this regard is therefore affirmed.

## B.    Evidence that Ameen Committed Murder

Ameen contends that the government's use of evidence implicating him in a murder so

prejudiced the jury that a new trial is required. During his testimony, Ameen claimed he was

kidnapped in 1989 by people who wanted money from his uncle. He moved from Detroit to

California shortly after that event. At the trial, Ameen's co-defendant and one-time business

partner, Barrett LaRoda, testified that Ameen told him he "took care of" one of his kidnappers

and then left Detroit. The questioning then continued:

> Q:    You also testified that the Defendant indicated something about taking
>        care of that individual?
>
> A:    Yes.
>
> Q:    And what, can you be more specific as to what was being said?
>
> A:    No.
>
> Q:    What was your understanding in the context of the conversation?
>
>            [Objection by defense counsel as to foundation]
>            [Objection overruled]
>
> Q:    What was your understanding of the context of the conversation? Speak
>        loudly, please.

---

[4]Defendants also request this Court "to clarify the limits of the *Ovalle* decision and to reaffirm that district judges in this Circuit retain their broad and historic discretion to ensure fair trials." (Ameen's Br. at 24) The defendants have presented no grounds, however, on which this court may refuse to follow *Ovalle*, a reported decision from this court. Defendants argue that the district court would have corrected the racial disparity in the jury pool, but was restrained from doing so by the holding in *Ovalle*. The record does reveal that the district court was properly troubled by the lack of African-Americans in the venire and determined it was bound by *Ovalle*. This record also demonstrates that the court refused to grant defendants' motions because they were not made in a timely manner.

A:    That he probably killed him.

(JA 618.)   Immediately following this exchange, Ameen's counsel moved for a mistrial.  The district court ruled that the witness had no qualifications to make such a statement, but declined to grant a mistrial.  The court gave a limiting instruction, directing the jury to disregard LaRoda's interpretation of what Ameen had meant.

Ameen asserts that the district court erred in refusing to grant his motion for a mistrial. This court reviews a denial of a mistrial motion for abuse of discretion. *United States v. Ursery*, 109 F.3d 1129, 1133 (6th Cir. 1997).  A district court's evidentiary rulings are also reviewed for abuse of discretion. *United States v. Haywood*, 280 F.3d 715, 720 (6th Cir. 2002).  An abuse of discretion occurs when this court has a "'definite and firm conviction that the [district] court . . . committed a clear error of judgment in the conclusion it reached.'" *Id*. (quoting *Huey v. Stine*, 230 F.3d 226, 228 (6th Cir. 2000)).

The evidence indicating that Ameen may have murdered an unidentified individual constitutes "prior bad act" evidence, the admissibility of which is governed by Federal Rule of Evidence 404(b).  This Court has developed a three-step process to determine whether evidence is admissible under Rule 404(b): (1) there must be sufficient evidence that the act in question actually occurred; (2) if so, the evidence of the act must be probative of a material issue other than character; and (3) the probative value of the evidence must substantially outweigh its potential prejudicial effect. *Haywood,* 280 F.3d at 719-20.  Arguably, the evidence at issue here does not pass the first of these three inquiries.  The government has produced no evidence, other than LaRoda's statement, that Ameen may have killed someone in Detroit.  There is no indication that Ameen was ever investigated, charged, or prosecuted for such an act, nor is there

8

any other evidence to corroborate LaRoda's rather general statement. The government could not provide a name for the alleged murder victim.

Even if there was sufficient evidence that the act took place, the alleged homicide was not probative of a material issue in the trial. "Evidence of other acts is probative of a material issue other than character if (1) the evidence is offered for an admissible purpose, (2) the purpose for which the evidence is offered is material or 'in issue', and (3) the evidence is probative with regard to the purpose for which it is offered." *Id*. at 720. The government claims the evidence showed that Ameen moved to California, not to pursue a legitimate career in the music industry, but rather to get away from Detroit. In his opening statement, however, Ameen's counsel admitted that Ameen went to Los Angeles both "to get out of the bad activities he'd been in in Detroit" as well as "to succeed in the music business." (JA 219.) Given Ameen's admission, the government's evidence that he killed someone has no additional probative value. Finally, an allegation of murder is inherently prejudicial, far outweighing any probative value.

The issue for this Court is whether the trial judge was required to grant a mistrial. The district court issued a curative instruction to the jury, directing them to ignore LaRoda's statement interpreting the phrase "take care of." When a curative statement is issued, this Court presumes that the jury will follow the instruction "unless there is an 'overwhelming probability' that the jury will be unable to follow the court's instructions . . . and a strong likelihood that the effect of the evidence would be 'devastating' to the defendant." *Greer v. Miller*, 483 U.S. 756, 766 n.8 (1987)(citations omitted). LaRoda's statement does not pass this high bar. Evidence of a murder that was more definitely explained could, in some circumstances, render a jury unable to follow a judge's curative instruction. LaRoda did not testify that he heard or knew that

9

Ameen had killed someone, merely that he interpreted Ameen's statement in that way. LaRoda specifically stated that he did not remember any additional details other than that Ameen said he "took care of" the man. Ameen has not shown an "overwhelming probability" that the jury would be unable to ignore LaRoda's statement that he thought Ameen said he had killed a man.

Ameen further argues that the district court's curative instruction was insufficient because it did not tell the jury to discount LaRoda's first statement that Ameen had said he "took care of" a man. The court informed the jury only that they must disregard LaRoda's second statement, his interpretation that Ameen meant that he killed someone. Nonetheless, Ameen did not object to the court's proposed curative instruction. Because no contemporaneous objection was made to LaRoda's first statement that Ameen said he "took care of" a man, this court must review the statement's admissibility for plain error pursuant to Federal Rule of Criminal Procedure 52(b). *United States v. Carney*, 387 F.3d 436, 452-53 (6th Cir. 2004). Under plain error review, this court may only correct an error not raised below if there is "(1) 'error,' (2) that is 'plain,' and (3) that 'affects substantial rights.'" *United States v. Cromer*, 389 F.3d 662, 672 (6th Cir. 2004) (quoting *United States v. Olano*, 507 U.S. 725, 732 (1993)). "If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error 'seriously affects the fairness, integrity, or public reputation of judicial proceedings.'" *Id.* (quoting *Olano*, 507 U.S. at 732).

The admission of LaRoda's first statement does not meet the requirements for reversal under plain-error review. Ameen has not shown that any alleged error was prejudicial. Furthermore, the ambiguous comment that Ameen "took care of" someone could have been interpreted in a variety of different ways, and indeed Ameen later explained the comment as

10

meaning that his uncle paid the men off.  Certainly, the error did not rise to the level of seriously affecting "the fairness, integrity, or public reputation of judicial proceedings."  The district court did not err in refusing to grant a mistrial.

**C.  The Government's Failure to Make Pre-trial Disclosure of Ameen's Prior Unrecorded Oral Statements**

Ameen next contends that the government violated Federal Rule of Criminal Procedure 16(a)(1)(A) by failing to disclose, prior to trial, oral statements made by Ameen.  At trial, a witness for the government, Agent Toth, testified as to the contents of an unrecorded conversation held with Ameen regarding Ameen's participation in the narcotics trade.  The government did not give Ameen any notice that it planned to introduce the substance of this conversation at trial.  At issue is whether the Rule 16 disclosure requirements apply to undocumented oral statements, or only to written records of such statements.

Ameen objected to the admission of Agent Toth's testimony for the first time in his Rule 33 motion for a new trial, which was filed over a year after the jury rendered its guilty verdict.  "When a defendant neglects to mount an objection to evidence at trial, he is precluded from arguing on appeal that its admission was flawed unless its allowance constituted plain error." *Carney,* 387 F.3d at 453. Ameen cannot meet the stringent requirements of the plain error test because he fails to show any error in the district court's admission of the testimony.

The government contends that the decision in *United States v. Holmes*, 975 F.2d 275, 284 (6th Cir. 1992), is controlling law on this issue.  In *Holmes*, this court held that Rule 16 "requires only that any *written record* of oral statements . . . be turned over to a defendant who so requests." *Id*. at 284 (emphasis added).  Because the government had no written record of the Ameen's statements, the prosecution had no duty to disclose the substance of the statements to

11

the defense. *Id.* Ameen does not allege that Toth made any written records regarding the conversation. Given the holding in *Holmes*, the district court did not commit plain error by allowing Toth's previously undisclosed testimony under Rule 16.[5]

**D.      Failure to Instruct the Jury on the Statute of Limitations for Conspiracy**

Ameen next claims that the trial court committed plain error by failing to instruct the jury on the five-year statute of limitations for conspiracy. "Trial courts have broad discretion in drafting jury instructions," and thus this court can only review the instructions for abuse of discretion. *United States v. Prince*, 214 F.3d 740, 761 (6th Cir. 2000).

As Ameen notes, the jury could not properly convict him if it believed that Ameen had withdrawn from the conspiracy prior to the limitations period. *See United States v. Grimmett*, 150 F.3d 958, 961 (8th Cir. 1998) ("The general rule is that an individual conspirator can commence the running of the statute of limitations as to that individual by affirmatively withdrawing from the conspiracy").

Because Ameen did not raise the objection before the trial court, this court may only review for plain error. *United States v. Dedhia*, 134 F.3d 802, 808 (6th Cir. 1998). The plain error review begins with a determination of whether error has occurred. To establish a drug

---

[5]This panel is, of course, required to follow the prior reported decision of another panel. *United States v. Willis*, 257 F.3d 636, 644 (6th Cir. 2001). While *Holmes* is therefore binding precedent, the holding therein is not entirely consistent with both the language and the purpose of current or prior Rule 16(a)(1)(A). (On December 1, 2002, Rule 16(a)(1)(A) was modified and recodified in a manner not affecting this case.) Rule 16(a)(1)(A) requires the government to disclose "the substance of any relevant oral statement made by the defendant, before or after arrest, in response to interrogation by a person the defendant knew was a government agent if the government intends to use the statement at trial." No reference is made to a requirement that the statement be reduced to writing, as required by the holding in *Holmes.* The fundamental purpose of Rule 16 is to minimize "prejudicial surprise at trial." *United States v. Clark*, 385 F.3d 609, 620 (6th Cir. 2004)(*citing United States v. Hernandez-Muniz*, 170 F.3d 1007, 1010 (10th Cir. 1999)). Nonetheless, we are bound by *Holmes*.

conspiracy under 21 U.S.C. § 846, the government was required to prove "(1) an agreement to violate drug laws; (2) knowledge and intent to join the conspiracy; and (3) participation in the conspiracy." *United States v. Layne*, 192 F.3d 556, 567 (6th Cir. 1999).  The government must show "the willful formation of a conspiracy and the willful membership of [Ameen] in the conspiracy" but was not required to prove that Ameen committed any overt acts in furtherance of the conspiracy. *Id*.

By the terms of 18 U.S.C. § 3282, the statute of limitations for conspiracy is five years. The initial indictment against Ameen was filed in 1997.  The indictment alleged the existence of a conspiracy running from 1987 to the time of the indictment.  In order to avoid running afoul of the statute of limitations, the government had to show that the specific conspiracy in which Ameen had been involved was on-going during the statute of limitations period, which began in 1992.  *See United States v. Brown*, 332 F.3d 363, 373 (6th Cir. 2003).

If the conspiracy was on-going, the "presumption of continuity" makes Ameen liable for the acts of his co-conspirators, even if he did not personally act on behalf of the conspiracy during the relevant statute of limitations period.  *Id*.  To prevail, Ameen must "extinguish the presumption of continuity" by showing that he affirmatively withdrew from the conspiracy before the relevant time period.  *Id*. at 374.  A defendant is found to have withdrawn from a conspiracy where he or she made "a full confession to authorities" or communicated to his co-conspirators "that he has abandoned the enterprise and its goals."  *Id*.  Merely ceasing activities on behalf of the conspiracy does not constitute withdrawal. *See id*.

In the district court, Ameen did not contend that he explicitly withdrew from any conspiracy; he contended at trial that he had never entered the specific conspiracy with which his

13

co-defendants were charged. He did admit, however, that he was involved in drug transactions in the 1980's. He testified that he moved away from Detroit in 1989 to get away from the drug business. His move to California occurred after the start of the conspiracy alleged in the indictment. Although Ameen did not present an explicit defense of withdrawal, the jury could have found that, by leaving Detroit to escape the drug-filled environment, Ameen "abandoned" the drug conspiracy and communicated his abandonment to his former co-conspirators. Because a reasonable jury could have found that Ameen withdrew from the conspiracy prior to 1992, had the district court received a request that it instruct the jury on the statute of limitations, such instruction should have been given. *See United States v. Fuchs*, 218 F.3d 957, 962 (9th Cir. 2000)(where the jury "could have based its general verdict on acts . . . that occurred outside the limitations period," the trial court erred by not issuing an instruction on the statute of limitations).

Although the district court may have committed error in failing to charge on the statute of limitations, given the precise language of the 1997 indictment which referenced events ten years earlier, that error was not plain; it was neither "clear" nor "obvious." *See Olano*, 507 U.S. at 734. At no point before or during the trial did Ameen bring the issue of a potential statute of limitations problem to the court's attention. *See Fuchs*, 218 F.3d at 962 (error was plain where defendants had filed a pre-trial motion to dismiss the indictment because of a statute of limitations violation). Furthermore, Ameen never explicitly argued that he withdrew from the conspiracy. Given the lack of any discussion about affirmative withdrawal, the need for a statute of limitations instruction would not have been either "clear" or "obvious" to the district court.

14

Ameen further asserts that the district court should have been aware of the statute of limitations issue because the jury, in the midst of deliberations, returned a note stating:

> In Count 1, the time line of 1987, 1998 is a concern of ours. Must the individuals be involved totally for that entire time period? Is one incident during that time period enough?

(JA 1054.) The jury's note, however, does not implicate the issue of withdrawal, but rather questions to what extent a defendant must be involved in order to be liable for the crimes of his co-conspirators. Notably, Ameen's attorney heard the question and agreed with the judge's decision simply to refer the jury to the original instructions. When the government asked the court to re-read a portion of the instructions in response to the jury's question, defense counsel argued that "I think the instruction you were going to give them is appropriate. . . . You were going to tell them to refer to the jury instructions." (JA 1057.) Because the need for a statute of limitations instruction was not obvious and was never brought to the district court's attention, Ameen cannot meet the plain error requirements.

**E.    Sufficiency of the Evidence as to Fantroy**

Fantroy also challenges the sufficiency of the evidence in support of his convictions. He contends that there is insufficient evidence to support his conviction on any of the three charges. Fantroy was convicted of drug conspiracy pursuant to 21 U.S.C. § 846, money laundering pursuant to 18 U.S.C. § 1956(a)(1)(A) and (B), and possession with intent to distribute pursuant to 21 U.S.C. § 841(a)(1). A defendant challenging the sufficiency of the evidence "bears a very heavy burden." *United States v. Daniel*, 329 F.3d 480, 485 (6th Cir. 2003) (quotations omitted).

This Court assesses the evidence in the light most favorable to the prosecution and determines whether "any rational trier of fact could have found the essential elements of the

15

crime beyond a reasonable doubt." *Id*. (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

In reviewing the sufficiency of the evidence, this court may not consider the credibility of witnesses or weigh the evidence. *United States v. Marshall*, 248 F.3d 525, 536 (6th Cir. 2001).

The indictment alleged that Fantroy transferred, or aided and abetted the transfer of, drug proceeds from Michigan to California via Western Union wire transfers. At trial, the government introduced evidence showing that thirteen wire transfers had been sent in Fantroy's name. Fantroy does not contest that these transfers involved drug money, but rather argues that there was insufficient evidence to show that he actually sent the transfers, rather than someone else using his name. Arthur Mitchell, a co-defendant who pleaded guilty, testified that he sent a wire transfer to California using Fantroy's name and used other individuals' names for other transfers. Mitchell further testified that he and Fantroy "used to mix up drugs together [and] . . . went and made a couple of wire transfers together." (JA 342.) "Circumstantial evidence alone is sufficient to sustain a conviction," and the evidence need not remove all possibility of innocence. *United States v. Cantrell*, 278 F.3d 543, 546 (6th Cir. 2001) The wire transfers sent in Fantroy's name, supported by Mitchell's statement that he sent transfers with Fantroy, are sufficient evidence from which a reasonable jury could have found, beyond a reasonable doubt, that Fantroy was involved in money laundering.

Fantroy next argues that the government produced insufficient evidence to support a conviction of possession with intent to distribute cocaine and heroin. In order to convict Fantroy under 21 U.S.C. § 841(a), the government was required to establish that Fantroy (1) knowingly (2) possessed a controlled substance (3) with intent to distribute it. *United States v. Gibbs*, 182 F.3d 408, 424 (6th Cir. 1999). "The government need not have provided evidence of actual

16

possession; proof of constructive possession suffices." *United States v. Welch*, 97 F.3d 142, 150 (6th Cir. 1996). From the record below, it is clear that the government produced more than sufficient evidence to support his conviction.

Agent Scott Toth of ATF testified that he executed a search warrant on 12114 Sorrento in December 1995. When Toth entered the apartment, Fantroy was one of three men present. Toth described the apartment as one of the "most unusual search warrant locations he had ever been to," and stated:

> [T]here was no furniture, no clothing. The only thing inside the living room was a card table, and on top of the card table was a triple beam scale, a glass plate, some razor blades, and there wasn't any stove or any refrigerator in the residence.

(JA 726.) In the kitchen, Toth found a portable hot plate, glass pots, and baking soda. Upon searching the rest of the apartment, Toth and his agents found a significant quantity of powder and crack cocaine and a small amount of heroin.

The "mere presence" of a defendant in proximity to drugs does not establish constructive possession, but the evidence here goes beyond mere presence. *See Welch*, 97 F.3d at 150. Fantroy had no drugs on his person, but he did have $700.00 in cash. Furthermore, the utilities to the apartment were in Fantroy's name, and, on a closet shelf, the agents found a bag of crack cocaine and an address book with Fantroy's name and the address of 12114 Sorrento in the "personal profile" section. Although Fantroy makes much of the facts that he did not have any drugs or the keys to the apartment on his person, this evidence is sufficient to convince a reasonable jury that Fantroy had constructive possession over the drugs found in the apartment. The evidence is sufficient to support the jury's verdict.

17

Finally, Fantroy claims the evidence is insufficient to support his conviction for drug conspiracy. The evidence produced at trial supports both the above-discussed counts and the conspiracy charge. Cooperating co-defendant Jeffrey Wells, testified that Fantroy was a "worker" in the "organization" and that he set up ten to fifteen heroin and crack houses around the city. (JA 476-77.) He further testified that Fantroy "tested" heroin for the organization by using it to check its purity. (JA 492.) As noted, Mitchell also testified that Fantroy was involved in the conspiracy. In examining the sufficiency of the evidence, this court may not question the credibility of the witnesses. *Marshall*, 248 F.3d at 536. Thus, the "testimony of an accomplice, even if uncorroborated, will suffice to support a conviction under federal law." *United States v. Spears*, 49 F.3d 1136, 1140 (6th Cir. 1995), *abrogated on other grounds*, *United States v. Wells*, 519 U.S. 482 (1997). This assignment of error is without merit.

**F.      Application of *United States v. Booker*, 125 S. Ct. 738 (2005)**

Both defendants, Ameen and Fantroy, argue on appeal that the district court violated their Sixth Amendment rights by raising their sentences based on an amount of drugs that was neither proven beyond a reasonable doubt to a jury nor admitted by the defendants. In *United States v. Booker*, 125 S. Ct. 738, 756 (2005), the Supreme Court held that "any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." Fantroy was convicted on three counts. Fantroy's presentence report recommended that he be held accountable for 228 grams of cocaine powder, 100 grams of crack cocaine, and 15 grams of heroin, for a marijuana equivalency of 2,060.6 kilograms of marijuana. Pursuant to U.S.S.G. § 2D1.1(c)(4), this placed Fantroy at a base offense

18

level of 32, which, given his criminal history category of VI, resulted in a sentencing guideline range of 210 to 262 months. The district court imposed a sentence of 210 months.

Ameen's presentence report recommended that Ameen was responsible for 200 to 300 kilograms of powder cocaine and 10 kilograms of heroin, with a marijuana equivalency of 50,000 to 70,000 kilograms. This computation of a base offense level of 38 together with a criminal history category of I resulted in a sentencing guideline range of 235 to 293 months. The district court sentenced Ameen to 240 months.

In *United States v. Baldwin*, this Court held:

> In the present case, Baldwin was sentenced to 55 months of imprisonment, which is in the lower half of the Sentencing Guidelines range of 51 to 63 months. The government presented no evidence to rebut the presumption that this sentence was prejudicial to Baldwin. . . . We therefore hold that the district court committed plain error in sentencing Baldwin under the then-mandatory Sentencing Guidelines.

– F.3d – , 2005 WL 1903832 (6th Cir. Aug. 10, 2005). Based upon the foregoing, this case is remanded for resentencing in light of *Booker*.

## G.     Ineffective Assistance of Counsel

Fantroy further challenges his sentence on the grounds of ineffective assistance of counsel. Fantroy alleges that his attorney provided ineffective assistance of counsel because she failed to file a motion for a downward departure pursuant to the Sentencing Guidelines and failed to object to portions of the presentence report. Fantroy asks this Court to vacate his sentence and remand his case for resentencing. Because Fantroy will be resentenced under *Booker*, this Court will not address at this time issues relating to his counsel's performance at sentencing.

**III.**

19

Based upon the foregoing, we **AFFIRM** Appellants' convictions and **REMAND** the case for resentencing in accordance with *Booker.*