**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 06a0018n.06**
**Filed: January 6, 2006**

**Nos. 04-6060; 04-6098**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| JOHN E. HEREFORD, | ) | EASTERN DISTRICT OF TENNESSEE |
| RAFAEL L. PHINAZEE, | ) | |
| | ) | |
| Defendants-Appellants. | ) | |

Before: NELSON, DAUGHTREY and SUTTON, Circuit Judges.

SUTTON, Circuit Judge. John Hereford and Rafael Phinazee appeal their convictions for conspiring to distribute crack and powder cocaine. Among other arguments, they contend that their involvement in the conspiracy was so limited in participation and time that insufficient evidence supports their convictions and that the statute of limitations bars prosecution of the charges against them. We reject both arguments (as well as the defendants' other contentions) and therefore affirm the convictions, although we vacate each of the defendant's sentences and remand for resentencing consistent with *United States v. Booker*, 543 U.S. 220 (2005).

I.

In 1997, a joint federal and local drug investigation identified Lindsey Morris as a major drug distributor in Chattanooga, Tennessee. From October 28, 1997 to May 21, 1998, authorities placed a pen register telephone tap on Morris's phone, tracing his incoming and outgoing calls. From April 22 to May 21, 1998, authorities placed a wire tap on the same phone, recording conversations between Morris and others in his drug-distribution operation.

On July 1, 1998, federal agents executed a warrant to search Morris's residence, where they found 29 individually wrapped plastic bags that each contained a quarter ounce of crack cocaine. Morris agreed to testify against his co-conspirators up and down the chain of distribution.

On June 24, 2003, a grand jury indicted John Hereford, Rafael Phinazee and eight others for conspiracy to distribute cocaine base (crack) and cocaine hydrochloride (powder).

At trial, Morris testified that for much of 1997 and until his arrest in 1998 co-conspirator Stacy Anderson supplied him with between a quarter kilogram and a half kilogram of crack cocaine every week. In the summer of 1997, Morris began distributing the drugs to Hereford, selling him between a quarter ounce and an ounce of crack cocaine once or twice a week. Morris further testified that, to his knowledge, Hereford did not use the drugs personally, but rather sold them in conjunction with operating a "good-time house," otherwise known as a house of prostitution. Hereford typically would sell the crack cocaine to men who used the drug as payment to prostitutes who lived at Hereford's house or spent time there. The pen tap logged 236 calls between phones

associated with Hereford and the phone Morris used to conduct his drug business. At trial, the jury heard conversations recorded by the wiretap in which Morris and Hereford discussed their distribution relationship, including plans to sell drugs on credit.

Morris began selling crack cocaine to Phinazee in the spring of 1998 and eventually provided him with four ounces of crack every one or two weeks. Through the wiretap recordings, the jury heard more than 20 phone conversations between Morris and Phinazee in which the two discussed the details of their drug distribution arrangement, including Phinazee's use of lower-level dealers, the sale of drugs on credit and details of the larger distribution network.

The jury found Hereford and Phinazee guilty of conspiring to distribute 50 grams or more of cocaine base and 5000 grams or more of cocaine hydrochloride. On August 20, 2004, the district court sentenced Hereford to 235 months and sentenced Phinazee to 360 months in accordance with the Sentencing Guidelines.

II.

A.

Both defendants claim that they were not involved in a drug-distribution conspiracy because they had only a buyer-seller relationship with Morris. While the legal premise of the defendants' argument is accurate, the factual premise is not.

The Sixth Circuit has held that "a buyer-seller relationship is not alone sufficient to tie a buyer to a conspiracy, for mere sales do not prove the existence of the agreement that must exist for there to be a conspiracy." *United States v. Anderson*, 89 F.3d 1306, 1310 (6th Cir. 1996) (internal quotation and citation omitted). At the same time, however, we have held that "where there is additional evidence beyond the mere purchase or sale, from which knowledge of the conspiracy may be inferred," the conviction for conspiracy should be upheld. *Id.* at 1311 (internal quotation omitted). We have found evidence of a conspiracy in the extension of credit, *see United States v. Grunsfeld*, 558 F.2d 1231, 1235 (6th Cir. 1977), repeated purchases from a single source, *see United States v. Brown*, 332 F.3d 363, 378 (6th Cir. 2003), and the sheer quantity of drugs transacted, *see United States v. Bourjaily*, 781 F.2d 539, 545 (6th Cir. 1986). The district court gave a jury instruction on this defense and neither defendant challenges that instruction, leaving us to decide whether sufficient evidence supports the conspiracy conviction.

"[V]iewing the evidence in the light most favorable to the prosecution," we believe that a "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Copeland*, 321 F.3d 582, 600 (6th Cir. 2003) (internal quotation omitted). Both Hereford and Phinazee obtained crack cocaine on credit and later paid Morris with the profits they made from selling the drug. Hereford bought crack cocaine from Morris once or twice a week for almost a year. Phinazee purchased crack cocaine less often, once every week or two, but he bought larger quantities, sometimes four ounces (over 100 grams) at a time. In addition, for the seven months of the pen trace, Morris spoke on the telephone with Hereford 236 times and with Phinazee 97 times. In the recorded phone conversations, Hereford agreed to pay Morris early so that

Morris could make a "power move" and acquire more crack cocaine from his supplier. Morris loaned him money indicating that he was a loyal customer. Morris also discussed the conspiracy with Phinazee, indicating several times that he was meeting with the boss (Anderson) and even with Anderson's boss. Phinazee indicated in the phone conversations that he understood that Morris needed to collect his money, just like Phinazee needed to collect from the distributors working for him. All of this evidence considered, a rational jury could find that Hereford and Phinazee were participants in this conspiracy.

B.

Defendants next argue that even if they were involved in a conspiracy, the statute of limitations bars the claim. Whether an indicted crime falls within the statute of limitations, both parties agree, is a fact question for the jury. *See Brown*, 332 F.3d at 372–374

"[A]s long as at least one act in furtherance of the conspiracy was committed within the limitations period, the statute of limitations is not violated." *United States v. Tsang*, No. 02-1776, 2004 U.S. App. LEXIS 8111, at *9 (6th Cir. Apr. 21, 2004); *see also United States v. Lash*, 937 F.2d 1077, 1081 (6th Cir. 1991) ("The government must show that the conspiracy continued and that at least one overt act in furtherance of the conspiracy occurred [within five years of the date of indictment]."). "Where a conspiracy contemplates a continuity of purpose and a continued performance of acts, it is presumed to exist until there has been an affirmative showing that it has terminated; and its members continue to be conspirators until there has been an affirmative showing that they have withdrawn." *United States v. Rios*, 842 F.2d 868, 873 (6th Cir. 1988) (internal quotation omitted). Withdrawal is difficult to prove: "A defendant is found to have withdrawn from

a conspiracy where he or she made a full confession to authorities or communicated to his co-conspirators that he has abandoned the enterprise and its goals. Merely ceasing activities on behalf of the conspiracy does not constitute withdrawal." *United States v. Fantroy*, Nos. 03-2264, 03-2290, 2005 U.S. App. LEXIS 19105 (6th Cir. Aug. 30, 2005) (internal quotation and citation omitted); *see also Brown*, 332 F.3d at 374 ("Mere cessation of activity is not sufficient" to "show affirmative action" to "defeat or disavow the conspiracy" which is necessary in "proving withdrawal."). Not even an arrest, we have held, necessarily constitutes withdrawal from a conspiracy. *See United States v. Robinson*, 390 F.3d 853, 882 (6th Cir. 2004).

In this case, prosecutors filed the indictment on June 24, 2003, alleging a conspiracy that ran from 1997 through August 2002. The statute of limitations for conspiracy is five years, making June 24, 1998, the relevant date for identifying an overt act in furtherance of the conspiracy and for determining whether the defendants had withdrawn from the conspiracy. The government demonstrated that there was not a limitations bar in two ways. First, the government presented specific overt-acts evidence linking Hereford and Phinazee to the conspiracy within the limitations period. Morris and Rhonda Shrum, Hereford's former girlfriend, testified that Hereford received drugs from Morris on June 30, 1998, and Morris testified that he continued to distribute drugs to Phinazee up until Morris's arrest on July 1, 1998. While the period between the start of the limitations period, June 24, 1998, and Morris' arrest, July 1, 1998, was admittedly short, a rational trier of fact could have concluded beyond a reasonable doubt that Hereford and Phinazee committed overt acts in furtherance of the conspiracy after June 24, 1998.

Second, neither Hereford nor Phinazee has presented any affirmative evidence of withdrawal. In other words, even if Hereford and Phinazee had not taken affirmative acts during the limitations period, the presumption of continuity implicates them for the continuing acts of their co-conspirators within the limitations period. Notably, neither defendant has argued that no overt act occurred after June 24, 1998, most probably because the seizure of 29 quarter ounce bags of crack cocaine from Morris on July 1, 1998, would itself provide sufficient evidence of an overt act in furtherance of the conspiracy within the limitations period.

Attempting to rebut this conclusion, both defendants argue that no evidence connects them to the conspiracy during the limitations period save the testimony of an untrustworthy co-conspirator, Morris. But that credibility determination is one that generally is reserved for the jury, not an appellate court. *See United States v. Henley*, 360 F.3d 509, 514 (6th Cir. 2004) (noting that while the defendant challenged the credibility of the co-conspirators, who had received lesser sentences in exchange for their testimony, it was not up to the court to "second-guess the jury's determinations"). While Morris admitted to lying in previous interactions with the police and before the grand jury, the jury nonetheless could have found his testimony at trial credible, especially given its consistency with other testimony in the trial. Phinazee separately notes that when agents recovered Morris's address book, his name was crossed out. As an initial matter, the evidence shows that his name was "partially scribbled out." And no evidence, to our knowledge, explains what the "partial[]" crossing out of Phinazee's name meant. What the evidence does show is that Morris testified that he continued to distribute drugs to Phinazee up until Morris's arrest on July 1, 1998. Nor, at any rate, does Phinazee meaningfully address the presumption that a conspiracy, once

established, continues absent an affirmative act of withdrawal. Phinazee's claim that he was such a minor member of the conspiracy that inaction should be sufficient evidence of withdrawal cannot be reconciled with the evidence that he was distributing drugs to others and buying up to four ounces every week or two from Morris.

C.

Hereford separately argues that his trial should have been severed from his co-conspirators' trial because there were multiple conspiracies, not a single conspiracy. This contention receives abuse-of-discretion review. *United States v. Williams*, 711 F.2d 748, 750 (6th Cir. 1983).

As a general rule, individuals indicted together in a conspiracy charge should be tried together. *See, e.g.*, *United States v. Dempsey*, 733 F.2d 392, 398 (6th Cir. 1984). "In order to escape the general rule, the defendant must carry the heavy burden of showing specific and compelling prejudice resulting from a joint trial which can be rectified only by separate trials." *United States v. Davis*, 809 F.2d 1194, 1207 (6th Cir. 1987) (internal quotation omitted). Hereford argues that he was prejudiced by the admission of evidence against some of his co-defendants (prior convictions) and by the defense offered by one of his co-defendants (withdrawal from the conspiracy). As to the evidentiary point, we have held that a limiting instruction generally suffices to protect co-defendants from the potential prejudice arising from evidence admitted against another defendant. *See United States v. Warner*, 690 F.2d 545, 553 (6th Cir. 1982). The court gave such an instruction and Hereford at all events never explains how he was prejudiced by the admission of this evidence. As to the withdrawal defense, the alleged prejudice to Hereford is equally unapparent. Hereford never explains how that defense was inconsistent with the defenses that Hereford presented at trial, *cf.*

*Zafro v. United States*, 506 U.S. 534 (1993) (holding that even mutually antagonistic defenses are not a per se reason to sever), and indeed evidence that certain members of the conspiracy had withdrawn from it might tend to show the tenuous nature of the overall conspiracy. In view of the presumption in favor of trying co-conspirators together and in view of the considerable evidence against Hereford, the district court did not abuse its discretion in refusing to sever Hereford's trial.

D.

Phinazee separately argues that the admission of evidence about his two prior drug-related convictions was not probative and unfairly prejudiced the outcome of his trial. We review this contention for abuse of discretion. *See United States v. Jones*, 403 F.3d 817, 820 (6th Cir. 2005)

The court admitted testimony by a Chattanooga police officer that Phinazee (1) had been arrested in 1997 for distributing drugs and (2) had been arrested in 1997 for possessing a significant quantity of crack cocaine in a location where police eventually arrested 30 people who had come to buy crack cocaine. In both instances, the court admitted the testimony to demonstrate Phinazee's intent to join the conspiracy.

Under Rule 404(b) of the Federal Rules of Evidence, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity [or] intent." We have frequently upheld the admission of such evidence to demonstrate intent in drug-distribution conspiracies. *See, e.g.*, *United States v. Harris*, 293 F.3d 970, 976 (6th Cir. 2002) (noting "defendant's past involvement in the sale and distribution of crack cocaine was relevant to show his intent to distribute cocaine"); *United States v. Hofstatter*, 8 F.3d 316, 323 (6th Cir. 1993).

The district court did not abuse its discretion in admitting this evidence.  In defense of the charge against him, Phinazee argued that he was a mere buyer of crack cocaine for personal consumption,  and the evidence of these recent charges helped to rebut this intent-based defense and show that Phinazee indeed planned to sell the drugs that Morris had distributed to him.  Given the considerable other evidence in this case that Phinazee was buying drugs from Morris and selling them to users and other dealers, moreover, it is difficult to grasp how this Rule 404(b) evidence—that Phinazee was selling drugs to others—could have unfairly prejudiced him.  The judge, it bears adding, provided a limiting instruction to the jury indicating that this evidence could be considered only for the purpose of evaluating Phinazee's intent and not for purposes of showing any criminal propensity.  No abuse of discretion occurred.

Phinazee next argues that the limiting instruction itself "was insufficient to mitigate the unfair prejudice because it is confusing at best and self-contradictory at worst."  Phinazee Br. at 42.  Because the instruction demanded that the jury not consider the testimony as evidence of the propensity of the defendant to have committed the crime, but did instruct them to use it to consider if he had the intent to enter the conspiracy, he contends that the instruction was misleading.  Phinazee, however, did not object to this instruction, and so his challenge to it receives plain-error review.  Fed. R. Crim. P. 52(b).  No such error occurred.  The court explained to the jury that this evidence could not be used to demonstrate a general propensity to join conspiracies to distribute crack cocaine and that the defendants were on trial only for what was specified in the indictment, not

for other wrongs. That instruction is consistent with our case law. *See, e.g., United States v. Gaitlan-Acevedo*, 148 F.3d 577, 592 (6th Cir. 1998).

The government concedes that Hereford and Phinazee are entitled to resentencing consistent with *United States v. Booker*, 543 U.S. 220 (2005). Accordingly, we will vacate their sentences and remand for resentencing under *Booker*.

III.

For these reasons, we affirm the convictions of Hereford and Phinazee and remand for resentencing consistent with *Booker*.