NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0122n.06

Nos. 09-1554 and 09-1578

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Feb 22, 2011**
LEONARD GREEN, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR THE |
| | ) | WESTERN DISTRICT OF MICHIGAN |
| WALTER GREENKING BOULDING, | ) | |
| WILLIE R. RICHARDSON, | ) | |
| | ) | OPINION |
| Defendants-Appellants. | ) | |

Before: BOGGS and COOK, Circuit Judges; and CARR, District Judge. [*]

**JAMES G. CARR, Senior District Judge.** Defendants-Appellants Walter Greenking Boulding and Willie Richardson appeal from their convictions and sentences for conspiracy to distribute and possess with intent to distribute fifty grams or more of cocaine base in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(B)(iii).

Defendants argue that they were denied an impartial jury drawn from a fair cross-section of the community in violation of the Sixth Amendment and Jury Selection and Service Act of 1968 (JSSA), 28 U.S.C. § 1861, *et seq.*

_____

[*] The Honorable James G. Carr, Senior United States District Judge for the Northern District of Ohio, sitting by designation.

Defendants raise separate issues in addition to their Sixth Amendment claim. Anticipating a possible change in the law, Boulding challenges the constitutionality of his mandatory life sentence.

Defendant Richardson, in a supplemental pro se brief, presents six additional issues for appeal. Four relate to enhancements applied to his sentencing. Richardson also alleges ineffective assistance of trial counsel. Finally, he argues that the district court erred in admitting evidence of a heroin conspiracy at trial.

For the following reasons, we **AFFIRM** the defendants' convictions and sentences.

## Background

On April 17, 2008, a grand jury for the Western District of Michigan returned a two-count superseding indictment charging both defendants with conspiracy to distribute and possess with intent to distribute more than fifty grams of cocaine base in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(B)(iii).

Defendants proceeded to trial by jury. At voir dire, fifty-two prospective jurors entered the courtroom, and fourteen sat in the jury box.

Noting that all the initial jurors appeared to be Caucasian and both defendants were African-American, the judge stated:

> Race is an issue in this country. We hear -- we hear the issue now discussed openly and importantly in the race for the presidency. You talk about it at work; you talk about it at home. People have feelings and interactions around racial issues. It's just reality.
> It's important that Mr. Boulding and Mr. Richardson believe and understand that even though the color of their skin is different than the color of your skin or my skin, that they are going to receive a fair and impartial trial here in this case.
> Does anyone have difficulty, no matter what your feelings are about race, if you have those feelings, does anybody have difficulty putting that to one side and saying, "I'm going to decide this case strictly on the evidence that comes in and under the law that the Court gives me?" Anybody have difficulty with that?

The jurors indicated they would have no such difficulty.

Richardson's counsel asked whether any of the jurors felt the judge's question about race was not a fair question to ask. None of the jurors expressed feeling that the question was unfair.

Boulding's counsel asked, "Do any of the jurors that are seated here in the box, do any of you have any friends that are African-American?" A number of jurors indicated that they did.

Neither the defendants' lawyers nor the government challenged any juror for cause, and the jury selection proceeded to peremptory challenges.

Before the second round of peremptory challenges, Richardson's counsel again asked whether any of the jurors felt the judge's question about race was not a fair question. Again, none of the jurors expressed feeling that it was unfair. Richardson's counsel also asked, "does anybody feel like race is not something that I as the attorney for Mr. Richardson should be concerned about? Does anybody feel that I shouldn't be concerned about that?" None of the jurors voiced disagreement. Richardson's counsel also asked the jurors whether Richardson's race would affect their ability to be fair. Again, none of the jurors indicated that race would affect his or her ability to be fair.

The parties went through two more rounds of peremptory challenges. Following each round, Richardson's counsel questioned the jurors whether they had any concern about the race issue. The jurors all denied any such concern. In total, the parties dismissed fifteen jurors on peremptory challenges.

When jury selection was complete, the court asked both the government and each defense counsel whether they were satisfied with the jury selected. Both Richardson's counsel and

3

Boulding's counsel indicated they were satisfied. The court then empaneled the jury and administered the oath. At that point, jeopardy attached. *E.g., Crist v. Bretz*, 437 U.S. 28, 38 (1978).

The court provided some preliminary instructions and dismissed the jury for a short recess.

After the jury left the courtroom, Richardson's counsel objected to the makeup of the venire, as he observed "not a single person of color." Boulding's counsel joined in the objection.

The judge ruled that the objection, made after the jury was sworn and jeopardy had attached, was untimely. Richardson's counsel argued that the issue had only come to his attention that morning as he observed the jury venire, and he had not made the objection in the jury's presence for fear of alienating potential jurors. Although reiterating that the objection was untimely, the judge allowed the parties to preserve a record for appeal by calling the jury administrator, Diane Hopkins, to testify regarding the jury-selection process.[1]

Following her testimony, the court again ruled the objection waived, and further held that the defendants had failed to show "systemic exclusion" of African-Americans, *see generally Duren v. Missouri*, 439 U.S. 357, 364 (1979), in the manner in which the court selected its venires.

There is no question that the lack of racial diversity was immediately apparent once the venire came into the courtroom. Addressing counsel's explanation for his failure to object earlier, the district court observed that sidebars are routinely practiced in federal court and defense counsel could have requested one had they wished to object to the venire without alienating potential jurors. The district court held that the defendants had not established cause and prejudice sufficient to overcome waiver.

---

[1] We assume that the district judge held the hearing out of an abundance of caution.

On the last day of the trial, Richardson's counsel indicated that Richardson wished to testify in his defense. The court advised Richardson that he had a constitutional right to testify subject to cross-examination, and asked him whether he had discussed with counsel the pros and cons of testifying. Richardson affirmed that he had discussed the issue with his counsel and wished to testify.

The prosecutor warned that should Richardson incriminate himself by testifying that he was involved in a different heroin conspiracy, he would not be insulated from other charges. The court again inquired whether counsel had explained the ramifications of testifying, and Richardson's counsel stated that he had "discussed exactly what [the prosecutor] stated on the record with Mr. Richardson." He nevertheless requested a ten-minute break to further discuss the matter with Richardson. Richardson disagreed with the request, stating, "I don't need ten minutes. I know what I want to do. I want to get up there." The court ordered a recess.

After the break, Richardson took the stand. He testified that he had never entered an agreement with Boulding to sell crack. He stated that he had never given the other defendants crack to sell, but that he had given them heroin to hold for a client. He admitted taking trips to Detroit to buy drugs, but claimed he had only purchased heroin. Richardson explained that he had a falling out with Boulding after he eventually did begin selling crack and they became competitors. On cross-examination, he admitted that he knew about an AK-47 but denied sending anyone to pick it up for him, explaining he did not need a gun and could not conceal an AK-47.

The jury found both defendants guilty of all charges.

On April 24, 2009, the district court sentenced Boulding to a mandatory term of life imprisonment. Boulding had been convicted of two prior felony drug offenses, subjecting him to

a mandatory minimum term of life imprisonment pursuant to 21 U.S.C. §§ 841(b)(1)(A), 841(b)(1)(B), and 851 when he was convicted of the conspiracy charge. The judge indicated that he would not have imposed a life sentence if he had the discretion to impose a different sentence.

The district court sentenced Richardson to 360 months' imprisonment. Richardson's presentence investigation report calculated his advisory guideline range to be 360 months to life. The advisory range resulted from a calculation of the drug quantity involved that multiplied the amount of crack cocaine found in Boulding's possession on his arrest by the number of weeks in the conspiracy. The presentence investigation report recommended a two-level enhancement for possession of a dangerous weapon, a four-level enhancement for being an organizer or leader of an offense involving five or more participants, and a two-level enhancement for obstruction of justice.

Richardson objected to several proposed sentencing enhancements. The court granted his objection to the obstruction enhancement and reduced his total offense level from 42 to 40. The court denied his other objections, finding that the evidence presented at trial, including Richardson's own testimony, amply supported the drug quantity calculation and the application of the enhancements.

Both defendants filed timely notices of appeal.

**Discussion**

**I. JSSA and Sixth Amendment Claims**

Both defendants assert that the Western District of Michigan's jury venire selection process denied them their Sixth Amendment right to a trial before a jury representing a fair cross-section of the community. Richardson also asserts that he was denied these rights under the Jury Selection and Service Act of 1968 (JSSA).

6

The JSSA requires that challenges to the venire in criminal cases be made "before the voir dire examination begins, or within seven days after the defendant discovered or could have discovered, by the exercise of diligence, the grounds therefor, whichever is earlier." 28 U.S.C. § 1867(a). *See United States v. Fantroy*, 146 F. App'x 808, 813 (6th Cir. 2005) (unpublished disposition). Because defendants raised their objection not only after voir dire had begun, but also after indicating that they were satisfied with the jury selection and after the jury had been sworn in, their claims under the JSSA are time-barred.

Federal Rule of Criminal Procedure 12 governs constitutional challenges to the jury. *Davis v. United States*, 411 U.S. 233, 236–37 (1973). Rule 12(b)(3)(B) provides that a "motion alleging a defect in the indictment or information" must be raised before trial. This requirement applies to "challenges to grand jury arrays, even when such challenges are on constitutional grounds." *Davis*, 411 U.S. at 238. Because "[c]hallenges of the petit jury are treated the same as challenges of the grand jury," the Sixth Circuit has held that challenges to the jury pool must be raised before the start of trial. *Fantroy*, 146 Fed. App'x at 813 (citing *United States v. Ovalle*, 136 F.3d 1092, 1107 (6th Cir. 1998).

Despite the violation of Rule 12(b)(3), defendants would still be entitled to relief on showing cause and actual prejudice. Fed. R. Crim. P. 12(e); *Ovalle*, 136 F.3d at 1107. Richardson's counsel explained that the cause of his failure to object earlier was that he had not known prior to observing the jury venire that there would be no minorities represented. He explained that he failed to object during jury selection because he did not wish to alienate the jury.

The district court correctly determined that the defense counsel's explanation failed to show cause excusing the waiver. To show cause, a defendant must demonstrate that "some objective

factor external to the defense impeded counsel's efforts to comply with the . . . procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). "[T]he mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for the procedural default." *Id.* at 486. As the district judge noted, both defendants' counsel had ample opportunity to make an objection, and could have done so in a sidebar or requested a recess if concerned about the objection's effect on the jury.

We affirm on the basis of the unexplained and unexcused untimeliness of the waiver. It is unnecessary to reach the merits.

## II. Constitutionality of Mandatory Sentences

As Boulding acknowledges, his challenge to the constitutionality of his mandatory sentence fails under current law. *See United States v. Washington*, 584 F.3d 693, 700 (6th Cir. 2009) (citing *Harris v. United States*, 536 U.S. 545, 565–68 (2002)) (recognizing that mandatory minimum sentences, which limit a sentencing court's discretion, are constitutional); *United States v. Wimbley*, 553 F.3d 455 (6th Cir. 2009).

## III. Supplemental Pro Se Claims

The Sixth Circuit does not ordinarily consider pro se claims brought by a defendant represented by counsel on appeal. *E.g.*, *United States v. Martinez*, 588 F.3d 301, 328 (6th Cir. 2009). We decline to do otherwise in this case.

## Conclusion

For the foregoing reasons, we **AFFIRM** the defendants' convictions and sentences.